CRITCHLOW v. MONSON, Secretary of State, et al.

No. 6528. Decided December 11, 1942. (131 P. 2d 794.)

See 16 C. J. S., Constitutional Law, sec. 98; Incompatibility of offices in the military, and in the civil service, see notes in 26 A. L. R. 142; 40 A. L. R. 654; 132 A. L. R. 254. See also 42 Am. Jur., 931.

*Brigham E. Roberts,* of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., and *Calvin L. Rampton,* Deputy Atty. Gen., for defendants.

YOUNG, District Judge.

On July 22, 1942, the last day on which a political candidate could file his petition with the Secretary of State to have his name placed on the ballot for the primary election on September 1, 1942, the petitioner Walter M. Critchlow, presented his petition to defendant secretary of State and tendered the alleged filing fee to have his name placed on the primary ballot as a candidate for nomination on the Democratic ticket for "Justice of the Supreme Court of the State of Utah for the unexpired term of Eugene E. Pratt." On the advice of the Attorney General, who ruled there is no vacancy in the Supreme Court to be filled at the Novem-

ber, 1942, election, the Secretary of State rejected the petition and declined to file the same.

The petitioner subsequently came into this court for a writ of mandate to compel the defendant E. E. Monson, Secretary of State, to place his name on the ballot for the primary election to be held September 1, 1942. Mr. Justice Pratt is also named a defendant, by reason of the claim that he is the real party in interest. The petitioner is the only person in any political party who attempted to become a candidate for a purported vacancy which defendants do not admit exists.

In addition to the foregoing facts, by his amended petition for a writ of mandate, plaintiff alleges in substance: (1) That on February 2, 1942, Eugene E. Pratt, then a duly elected, qualified and acting associate justice of this court, notified the Governor that he was ordered to active duty as a reserve officer of the United States Army effective February 12, 1942, by reason of the fact this nation is involved in war; (2) that said justice requested a leave of absence pursuant to Section 27, Article VIII, Constitution of Utah, and Chap. 105, Laws of Utah 1941; (3) that by letter the Governor attempted to confirm and grant a leave of absence as requested pursuant to said constitutional provision and said statute; (4) that said Chap. 105, Laws of Utah 1941, is unconstitutional in view of Sec. 23, Article VII, Constitution of Utah; (5) that said Eugene E. Pratt on February 12, 1942, became an officer on active duty in the United States Army with the rank of major, and that he thereby held and still holds an office under the government of the United States contrary to said Section 23, Article VII, Constitution of Utah; (6) that by entering such "office" by taking up active duty as a major in the army on said date he "resigned, forfeited and vacated his office as justice of the Supreme Court of the State of Utah and that since said time said latter office has been and is now vacant;" and (7) that no one has been appointed or elected to fill such "vacancy," and that said office is required by

the state constitution to be filled at the next general election which is November 3, 1942, which office plaintiff is qualified by law as a candidate to fill.

The defendant Secretary of State filed an answer, represented by the Attorney General, and Mr. Justice Pratt acting in his own behalf filed a separate answer in which he alleges that the amended petition not only fails to state facts sufficient to entitle the plaintiff to any relief, but that it shows on its face that the plaintiff is not entitled to a writ of mandate. Mr. Justice Pratt filed a brief, but he declined to participate in the oral arguments.

Counsel for defendant has not raised the question as to whether mandamus is the proper remedy, and this matter not being before us, we express no opinion with respect to that matter.

We will now proceed to examine plaintiff's position on its merits.

It is the plaintiff's contention, as we understand it, that when Mr. Justice Pratt was sworn into the United States Army on February 12, 1942, his right to the office as a Utah State Supreme Court Justice was automatically forfeited. His position is predicated upon § 23, Art. VII, Constitution of Utah, which provides as follows:

"No person, while holding any office under the United States' government, shall hold any office under the State Government of Utah, * * *."

A casual reading of the last quoted section would tend to support plaintiff's contention. Plaintiff also cites a number of cases, which hold either directly or indirectly that acceptance of a commission in the United States Army constitutes assumption of an office under the Government of the United States which vacates the state office. A detailed examination of many of those cases discloses the fact that they arose over salary claims, wherein a state official who entered military service sought to collect his official state salary while absent from the state and not engaged in the

performance of the duties of his state office. In the present case that element is not present, Mr. Justice Pratt having expressly disavowed any right to collect any salary from the day he was inducted into the United States Army.

In many of the earlier cases cited by plaintiff it will be noted that the one inducted into service was a volunteer. By that we do not mean to say that a volunteer would forfeit his office, for that question is not before us. But in the instant case Mr. Justice Pratt, being a reserve officer, had no choice but to accept his duties as a major in the United States Army.

It is conceded by the plaintiff that had Mr. Justice Pratt gone into the United States Army as a private, either as a volunteer or under the United States Selective Service Act, 50 U. S. C. A. Appendix § 301 et seq., then the constitutional provision quoted above would have no application. That being true, we would have this anomalous situation. Suppose plaintiff prevailed in this action, his name would then be placed upon the ballot, and there being no opposition, he would then of course be elected at the general election to be held November 3, 1942. Then let us assume that on November 5 he was inducted into the United States Army under the Selective Service Act. So long as he remained a private he would have the right to hold the office to which he had been elected. But if through meritorious service he was promoted to the rank of a second lieutenant, then under plaintiff's theory, the office to which he had been elected would be vacated.

In determining the meaning and extent of a constitutional provision, the reason for its adoption must be borne in mind. The question then arises against what persons, and against what practices or conduct is the foregoing constitutional provision aimed? Was it intended to apply to one in the position of Mr. Justice Pratt? The United States Supreme Court in *Arver* v. *United States*, 245 U. S. 366, 38 S. Ct. 159, 165, 62 L. Ed. 349, L. R. A. 1918C, 361, Ann. Cas. 1918B, 856, held that the United States government in time

of war has the right to require citizens within ages and classifications prescribed by Congress to render military service. In the concluding paragraph the Supreme Court declared:

"Finally, as we are unable to conceive upon what theory the exaction by government from the citizen of the performance of his supreme and noble duty of contributing to the defense of the rights and honor of the nation as the result of a war declared by the great representative body of the people can be said to be the imposition of involuntary servitude in violation of the provisions of the Thirteenth Amendment. We are constrained to the conclusion that the contention to that effect is refuted by its mere statement."

### Article XV, Constitution of Utah, declares:

"Section 1. The militia shall consist of all able-bodied male inhabitants of the State, between the ages of eighteen and forty-five years, except such as are exempted by law.

"Sec. 2. The Legislature shall provide by law for the organization, equipment and discipline of the militia, which shall conform as nearly as practicable to the regulations for the government of the armies of the United States."

Section 54-1-1, R. S. U. 1933, enacted under the foregoing constitutional provision, specifies the exemptions from militia service, but it will be noted that in times "of war, insurrection, invasion, tumult, riot or public disaster, or imminent danger therof" not even judges are exempt from military service. The constitution recognizes the necessity for military service by state officials in times of emergency in order to preserve our system of government and to safeguard the existence of the state.

By Section 10, Article IV, Constitution of Utah, every state official is required to take the following oath of office:

"I do solemnly swear (or affirm) that I will support, obey and defend the Constitution of the United States and the Constitution of this State, and that I will discharge the duties of my office with fidelity."

### By Article VI of the Constitution of the United States,

"all executive and judicial Officers * * * of the several States, shall be bound by Oath or Affirmation, to support this Constitution."

It is conceded that Mr. Justice Pratt took the above mentioned oath of office when he entered upon his duties as a justice of this court. We believe that oath means exactly what it says, that the person entering an office under the constitution of this state will support, obey and defend the Constitution of the United States as well as the Constitution of Utah, by actual deeds and not by mere lip-service.

The provisions of the state constitution with respect to service in the militia do not indicate that service is intended to be restricted to meeting merely some local emergency.

We do not believe the provisions of § 23, Art. VII, Constitution of Utah, were ever designed to prevent citizens from rendering the most skillful and advanced type of military service to the nation which they are qualified by training and experience to render. We do not believe there is any merit to the argument that a person who lacks the capacity and skill to serve as an officer in the army during war time can hold his state position while the man who is well qualified to serve as an officer in military service for the duration of the war must renounce his state office. Such argument would place a premium on inefficiency and lack of ability for leadership. The fact that we are engaged in an all-out struggle requires that every person shall serve where he can render the most efficient and beneficial service to the nation.

We are in accord with the reasoning in the case of *State ex rel. McGaughey* v. *Grayston,* 163 S. W. 2d 335, 337, in which the Supreme Court of Missouri declared that under a constitutional provision, similar to our own, a circuit judge did not forfeit his state office by being called into the United States Army as an officer in the National Guard for the duration of the war. That court declares that there is a distinction between career army officers and those who are officers in military service only for the duration of the war and who return to their civilian pursuits on the cessation of hostilities:

"Relator contends that Judge Watson as a National Guard Colonel in Federal service accepted 'an office of profit under the United States' while holding a State office which is forbidden by our Constitution. As a result, he insists, Judge Watson has forfeited his judgeship under the rule that the acceptance of a second office which is forbidden or incompatible to the office already held ipso facto vacates the first office. * * *

"Historically the 'militia' or 'militiamen' have been held to comprehend every temporary citizen-soldier who in time of war or emergency forsakes his civilian pursuits to enter for the duration the active military service of his country. The term 'militia' was not used as restricted to the National Guard. Its early usage applied to each and every able-bodied citizen between the ages of 18 and 45. By our present Constitution it is the same today.

"Article XIV, Sec. 4 of our Constitution Mo. R. S. A. provides: 'No person holding an office of profit under the United States shall, during his continuance in such office, hold any office of profit under this State.'

"When Judge Watson was ordered into Federal service as Colonel of the Missouri National Guard was he then 'holding an office of profit under the United States' within the meaning of this provision? It is our conclusion, and we so decide, that this provision was never intended to apply and does not now apply to the militiaman who enters the service of his country in time of emergency or war.

\* \* \*

"A decision of the Supreme Court of California also supports our views. In an action to determine title to office that court held, under a similar constitutional provision, that a major in the Marine Corps Reserve did not lose his office of county construction engineer upon being called to active duty. It found that such a constitutional provision was not applicable to the temporary citizen-soldier. Discussing an almost identical provision it said: 'It was never the intent or purpose of * * * the Constitution of this state to discourage public employees from rendering military or naval service, to deter them from answering, or induce them to evade such a call, or to tend to impede the federal government in its effort to mobilize the citizenry, or interfere with efforts to meet a major emergency. The constitutional provision can neither be construed nor applied to effect such a result.' "

The learned Missouri court then declares:

"Accordingly we find there is no legal incompatibility in holding both offices.

"We would recognize as incompatible service in the Regular Army as we understand that term to denote professional, permanent soldiery, those who have chosen the military service as a career. They should be distinguished from the militiamen who are ordinarily occupied in the pursuits of civil life but are organized for discipline and drill and called into the field for temporary military service when the exigencies of the country require it and from the citizen-soldiers who are in the military services only in time of war or emergency.

"We notice briefly the development of military training for civilians and hold that it in no way has affected or changed this distinction. As the need for uniform training became recognized the militia was classified into the Organized Militia and the Reserve Militia. The Organized Militia became the National Guard and was trained with Federal funds. Next was created the National Guard Reserve. The Officers' Reserve Corps, the enlisted Reserve Corps, the National Army and the Organized Reserves were organized. The National Defense Act observes these units as distinct from the Regular Army. Regardless of name, these units are composed of persons who are primarily civilians. The fact that they leave their civil pursuits to take up arms for their country during the time of emergency or war does not make them professional soldiers."

The only modern case on which plaintiff relies in support of his contention that Mr. Justice Pratt forfeited his office, is *Commonwealth ex rel. Crow* v. *Smith,* 343 Pa. 446, 23 A. 2d 440. The latter case is based on the earlier Pennsylvania cases, and we do not believe the reasoning is sound. In that case William J. Crow, the mayor of Uniontown, was a Reserve Officer from 1925 on, and he was called to active duty on May 27, 1941, and entered service as a major. The legislature by an act of July 2, 1941, 65 P. S. Pa. § 1, 1.1, attempted to make some prior statutes on incompatible offices inapplicable to persons called to active military or naval service during war or emergency. The legislative enactment went into effect after Crow was called to active service, and the Pennsylvania Supreme Court held that he had vacated his office as mayor. We believe the following are better reasoned cases: *State ex rel. McGaughey* v. *Grayston,* supra, and *McCoy* v. *Board of Supervisors of Los Angeles County,* 18 Cal. 2d 193, 114 P. 2d 569. See, also, *Gullickson* v. *Mitchell,* Mont., 126 P. 2d 1106.

We therefore hold that the constitutional provision in question, § 23, Art. VII, was designed to prevent practices which would tend to undermine the stability of our state government, and it was aimed at political office seekers, particularly those who might seek to draw two full time salaries from positions incompatible and impossible to perform simultaneously without neglecting performance of the duties of the state office. We hold that the provision has no reference to those who are called to military duty during time of war or national emergency, who plan to be absent from duties in this state no longer than the emergency reasonably requires. We further hold that the provision particularly has no application to those who are granted a leave of absence in accordance with the constitution or statute.

Before considering any of the provisions of Chap. 105, Laws of Utah 1941, which the petitioner attacks as unconstitutional in view of § 23, Art. VII above cited, we desire to direct our attention to the facts which the plaintiff admits. Mr. Justice Pratt was a member of the Officers Reserve Corps since 1925. He was not called to active duty until after war was declared. It is frankly admitted and specifically alleged by the plaintiff that on February 2, 1942, Mr. Justice Pratt was notified he was called to active duty as a Reserve Officer effective February 12, 1942. He not only asked for a leave of absence under the challenged statute, but he specifically requested a leave of absence from the Governor under the provisions of § 27, Art. VIII, Constitution of Utah, which reads as follows:

"Any judicial officer who shall absent himself from the State or district for more than ninety consecutive days, shall be deemed to have forfeited his office: Provided, That in case of extreme necessity, the Governor may extend the leave of absence to such time as the necessity therefor shall exist."

The Governor granted a leave of absence for such time as the emergency shall exist.

Does the right to grant a leave of absence relate solely to some personal emergency, or can it be an emergency which affects 130,000,000 people? We do not believe the constitution can be so narrowly construed as to limit the emergency for which a leave of absence is granted, to the personal welfare and health of the justice or other judicial officer. Like other citizens called from their civilian pursuits, he was obliged to respond to the call. To have refused to serve would not only have been an act of disloyalty, but a violation of his oath to support the Constitution of the United States and the laws enacted for the prosecution of the war and the consequences of such refusal might have been court martial and incapacity to perform the duties of his office in the State of Utah for an entirely different reason. Mr. Justice Pratt properly requested a leave of absence, and the Governor acted in accordance with his authority under the Constitution in granting such leave of absence by reason of a national emergency consisting of war, in which the justice was called to serve the nation in a capacity in which he is well qualified.

It is not claimed that Mr. Justice Pratt has attempted to draw his salary or receive any of the emoluments of office as a justice of this court. As stated in *State ex rel. McGaughey* v. *Grayston*, Mo. Sup., 163 S. W. 2d 335, at page 341:

"The situation we are considering is analogous to a leave of absence as that term is understood in the business world. The common meaning of the term signifies temporary absence from duty with an intention to return, during which time remuneration is suspended. We note with approval that Judge Watson has not drawn or received any salary as circuit judge since December, 1940. The fact that Judge Watson is unable personally to perform his judicial duties while in military service does not make his holding both offices incompatible under the circumstances. If the law did not permit a substitute to carry on the duties of the office in his absence a different question might be presented. * * *"

Plaintiff further argues that even if Mr. Justice Pratt has not forfeited his office, there is at least a "temporary va-

cancy" in the office while the justice is on active duty in the military service; and it is contended that under § 10, Art. VII, Constitution of Utah, the Governor should appoint some one to fill the temporary "vacancy" until the next election, and that petitioner is entitled to be elected at the next election to fill the "temporary vacancy" until the justice returns from his leave of absence. The fatal objection to the argument is that plaintiff did not attempt to file a petition to have his name placed in nomination to fill any "temporary vacancy" until Mr. Justice Pratt returns. Plaintiff asked to have his name placed on the primary ballot for nomination to the office of "Justice of the Supreme Court of the State of Utah for the unexpired term of Eugene E. Pratt." Attention is now directed to the constitutional provision for filling vacancies:

"* * * If the office of justice of the supreme or district court, * * * be vacated by death, resignation or otherwise, it shall be the duty of the Governor to fill the same by appointment, and the appointee shall hold his office until his successor shall be elected and qualified, as may be by law provided."

We hold that the constitutional provision relates to permanent severance from office, not to any leave of absence or any temporary disqualification. There is no provision in the Constitution for election to serve for an indefinite term such as would arise by a leave of absence, if we follow the reasoning of plaintiff. The language used in the Constitution clearly shows that the term "vacancy" has no reference to a leave of absence nor to any temporary disability. Section 2, Art. VIII specifies that

"If a justice of the Supreme Court shall be disqualified from sitting in a cause before said court, the remaining judges shall call a district judge to sit with them on the hearing of such cause."

This negatives the idea that if a justice is temporarily disqualified, there should be an appointment by the Governor or an election.

This court has followed the practice of calling in district judges to sit in place of a justice who was unable to be

present by reason of illness or other disabilities. The term "disqualified" has been interpreted to mean not only personal interest in the particular case on the part of ▮ a justice, or that he was counsel during the trial or prior proceedings, or that he was otherwise disqualified to hear a cause. In the case of *In re Thompson's Estate*, 72 Utah 17, 269 P. 103, Judge McCrea of the third judicial district was called in to sit in place of Mr. Justice Frick who was ill and who went to California in the hope of recovering more rapidly in a warmer climate. Justice Frick died in California February 12, 1927, six days before the case was heard on the 18th. On February 19, 1927, one day following hearing of the oral arguments in the case, the Governor appointed Justice Gideon to fill the vacancy created by the death of Justice Frick, to hold office until the next election. Mr. Justice Gideon qualified and sat and participated in the hearings on and after February 23, 1927. Judge McCrea continued to participate in the deliberations in the Thompson Estate matter. Two justices and Judge McCrea joined in the prevailing opinion, and the other two justices dissented. A petition for rehearing was filed in which it was contended that there were only four justices. It was argued that when death of Justice Frick occurred, the Governor had the right to make an appointment to fill the vacancy and that the court was without a "disqualified" member such as would warrant the remaining justices in calling in a district judge. It was contended that § 13, Art. VIII, specified what disqualifies a judge or justice, and that illness is not one of such disqualifications.

In discussing this matter on petition for rehearing, 72 Utah 17, at page 86, 269 P. 103, at page 128, Mr. Justice Straup said:

"It is the contention that there can be no disqualification of any member of this court except as enumerated in section 13 referred to, and thus it is urged that neither illness nor any other disability or condition rendering a member of this court unable to be present on the hearing of a cause or causes or of participating therein consti-

tutes a disqualification within the meaning of the Constitution. Since statehood, and for more than 30 years, when a member of this court was ill or otherwise unable to be present at the hearing of a cause, it has been the uniform practice to call in a district judge to sit in place of such absent member, unless the parties consented to submit the case to the remaining members of the court. It is evident that section 13 of article 8 of the Constitution was not intended to define nor to prescribe the term 'disqualification,' as used in section 2 of article 8 of the Constitution. Nor is the term otherwise by the Constitution defined or prescribed. We therefore must look elsewhere for that. We think the term is used in its natural and ordinary sense, and thus includes illness or a physical disability or other condition incapacitating a member of the court, and may even include the death of such member. 18 C. J. 1283; *State* v. *Blair*, 53 Vt. 24; *Matter of Maguire*, 57 Cal. 604, 40 Am. Rep. 125; *Kelley* v. *Edwards*, 38 Mich. 210; *Gas Products Co.* v. *Rankin*, 63 Mont. 372, 207 P. 993, 24 A. L. R. 294. It further is contended that, when Justice Frick died on February 12, 1927, a vacancy of his office occurred, and that the remaining justices were without authority to call in or to permit a district judge to sit with them until the vacancy was filled by appointment of the Governor of the state and the appointee qualified. We think that contention is fully answered in the case of *Kelley* v. *Edwards*, supra."

On February 12, 1942, when his leave of absence granted by the Governor under both the constitution and Chapter 105, Laws of Utah, 1941, commenced, Justice Pratt not only indicated that he would not accept the salary of justice while in military service, but he indicated he would not sit with the court on cases to be argued thereafter. As a result this court has called in district judges as in other cases of disqualification of a justice, on the precedent of *In re Thompson's Estate,* supra. There is no merit to the argument that any vacancy has actually existed as far as opportunity for litigants to present their arguments before a full court of five members. Whether a justice is involuntarily disqualified under the provision of § 13, Art. VIII of the Constitution, or he voluntarily disqualifies himself to sit with the other members of the court because he cannot give full time to deliberation and decision of cases placed on the calendar, the result is the same. Someone has been appointed

to take his place in those cases. It might be said that a district judge who is called in to act in place of a justice who is disqualified, is a justice pro tempore of the Supreme Court as to the cases heard before him. Even if we follow the reasoning of plaintiff to the extent of saying that there is a "temporary vacancy" when a justice is on a leave of absence or otherwise disqualified to sit at the hearing of new cases to be argued during such disability, the Constitution provides a method for filling such "temporary vacancies" but it does not authorize an election. The reason is quite apparent. A leave of absence or some disability or disqualification which may prevent a justice from acting in a specified case or cases, is generally brief or uncertain in duration. An election must be for a definite term and until the successor is elected and qualifies. As previously pointed out, if there were to be an election to fill such "temporary vacancy" the alleged disability or absence causing the temporary vacancy in the vast majority of instances might be ended before the election could be held, or the office assumed.

The next contention of plaintiff which we shall examine is the proposition that Sec. 1, Chap. 105, Laws of Utah 1941, is unconstitutional, which section and act is as follows:

"Every officer and employee of the state or of any county, municipal corporation, or governmental district who is a member of the national guard or naval militia or a member of the reserve corps or force in the federal military, naval, or marine service shall be entitled to absent himself from his duties or service while engaged in the performance of ordered military or naval duty and while going to and returning from such duty. No such officer or employee shall be subjected by any person directly or indirectly by reason of such absence to any loss or diminution of vacation or holiday privilege or be prejudiced by reason of such absence with reference to promotion or continuances in office, employment, reappointment to office, or reemployment.

"In the case of any such person who engages in such ordered service or duty who is in the employ of the state, county, municipal corporation or governmental district who leaves or has left his position to engage in such service or duty, the person shall be given a leave of absence from such position by the state, county, municipal corpora-

tion or governmental district employing the person for the period of time the person is in such military service. Upon the termination of said military service or duty such person shall be restored to such position or to a position of like seniority, status and pay providing the person makes application for restoration of his position within 40 days after he is relieved of such training, service, or duty, * * *.

"No officer or employee of the state, county, municipal corporation or governmental district who is a member of the national guard, naval militia or reserve corps or force in the state or federal military or naval force who is called, inducted or ordered into federal service shall be deemed to have forfeited or vacated his office or position while serving in the armed forces of the state or federal government * * *."

Certainly, if there are two possible constructions, one of which will render the act constitutional and the other unconstitutional, the interpretation will be adopted which will save the act. If the act is severable, and a part is unconstitutional, such determination will not vitiate the remainder of the act.

The statute attempts to put in operation a right which already exists under the Constitution. It is urged that the statute merely affects and proposes to grant leaves of absence to those in the "ordered military service," including naval service, and that the classification has no constitutional basis, but that it is arbitrary and capricious. The only alleged fact given in support of such claim is that the act does not specifically cover those cases where men enlist voluntarily; but as long as the act relates to all who enter active duty in the armed forces of our nation because they are ordered to do so, there is no arbitrary discrimination between persons in the same relative positions or situations. We do not agree that the sole purpose of the act is to encourage men to enlist, and that the provisions of the act have no reasonable relation to the objects of the act. The fact is that the act was designed not to encourage men to enlist, but to prevent permanent severance of state officers and other officials and employees in public service from their particular positions and em-

ployment. The act refers to all who enter ordered military service, who are called to active duty, which comprehends all classes of service which the men enter for the reason they are required by law or executive order to enter because of the war and national emergency. We believe the legislature intended that such calls to military service shall not be construed as resignations nor as voluntary severance from position or employment, and that during the performance of such service they shall have a leave of absence. One of the apparent objects of the statute as well as that of similar statutes in other states, is to have a position or job open to the ones who are compelled to leave them temporarily because of the call to the armed forces. Among other things, the act was designed to aid morale. It definitely informs a man that he need not worry about leaving his office or position, for he is granted a leave of absence, and that he will not be unemployed when he returns. The plaintiff has misconceived the objectives of the act.

The next contention is that the act is unconstitutional for the reason it gives the Governor power to appoint an officer pro tempore to perform the necessary duties of the officer while he is in state or federal military service. It is contended that there is no constitutional power of appointment by the Governor except until the next general election. It will be noted that the power of appointment in the Constitution is to temporarily fill until the next election a permanent vacancy resulting from death or resignation or other causes which leave the office vacant for the unexpired term. The constitution is silent as to the matter of substitution except of judges for justices who are disqualified. Even if the petitioner were right in saying that Governor does not have the right to appoint a justice pro tempore for the duration of the leave of absence which shall not exceed the unexpired term of Mr. Justice Pratt, he would not aid his position, for it does not follow that if the Governor does not have such power that there must be an election. If we hold

that the power of substitution resides in this court, the contention of plaintiff still fails.

Writ of mandamus denied.

MOFFAT, C. J., concurs.

WOLFE, Justice (concurring).

I concur in the results and in much that is said in the opinion. Some of the grounds of the opinion are unnecessary to sustain it. As to them I do not care to make a commitment. My best approach is to call attention to the parts of that part of the reasoning in the opinion with which I do not agree, coupling such remarks with what I think are the correct bases.

I think viewed in the light of the purposes of the provision it was not intended to prevent a man who was not a career soldier from at one and the same time holding a state office and going to the defense of his country in time of war as an officer in the United States Army.

The provision was designed for the purpose of preventing any likelihood or possibility of a person exercising functions as an officer of the Federal Government incompatible with the functions of the State Government or which might intrude on the rights or supposed rights of the states. In that sense it was intended to prevent a divided allegiance by one person serving two governments. All the war powers are given to the Federal Government. It wages war for the states as a single nation under the title of the United States. There is no possibility of conflict or incompatibility. If there were such possibility I should say the provision would apply even though the state officer was in a situation where he would be required to accept a commission as an active officer of the United States Army because our constitutional fathers might have said in such case: "Unfortunate though it is that you must lose your position with the State, because of the call of your country, it is better that you

have no connection with the State office you are occupying."
It is because I do not believe that there is any reasonable
possibility of incompatibility that I think the decision cor-
rect.

I think the basis for the decision is expressed in the words
of the opinion reading as follows:

> "We have already held that ordered military service by an officer
> of the State who is not a career soldier, in time of war, whether his
> service be that of a private or a commissioned officer, was never
> intended by the constitutional convention to be prohibited."

I therefore see no occasion for basing the decision on any
construction of § 27, Art. VIII of our Constitution, and I
do not concur in that part of the opinion. Nor do I see any
relevancy in the quotation from the case of Arver v. United
States set out in the opinion. It seems to meet an argument
that conscription of citizens for military service was against
the 13th Amendment of the Constitution of the United
States. Nor do I see the relevancy of Art. XV of our Con-
stitution; nor of 54-1-1, R. S. U. 1933; nor of § 10, Art. IV
of the Constitution of Utah. The Constitution of Utah may
place conditions and limitations on the right to hold a state
office. There is nothing—not even the Federal Constitution
which could prevent our Constitution from disqualifying
any state officer from holding any Federal office—civil or
military. The point is that § 23, Art. VII of our Constitu-
tion was not intended to require one responding to an order
to assume an office in the United States Army to forfeit
his state office. And that is all there is to the question. The
fact that the Federal conscription of citizens of the United
States is not involuntary servitude under the 13th Amend-
ment of the Federal Constitution nor that the fact that Art.
XV of our Constitution provides for a state militia and
describes its constituency nor that "not even judges are ex-
empt from state militia service" (§ 23 of Art. VII of our
Constitution does not deal with the contemporaneous hold-
ing of two state offices—whether military or civil) nor that

§ 10, Art. IV of our Constitution and Art. VI of the Constitution of the United States require an oath by State judicial and executive officers to support and defend the Constitution of the United States, have much to do with the question at hand. In spite of all these provisions it may lie within the power of the people of this state through their constitution or through legislative enactment to prohibit an officer of the United States Army even compelled to go into federal service during an emergency from continuing an encumbency in a state office. If the implication from § 10, Art. IV of our Constitution or from Art. VI of the Constitution of the United States is that the State cannot prohibit persons appointed or ordered into services of the United States as military officers for an emergency from contemporaneous encumbency in state offices, then perhaps it cannot prevent them from such encumbency when they support the Federal Constitution by responding for a call to fill a Federal civil office connected with the war effort. The only comfort I can draw from these citations is that they tend to be persuasive of the proposition that the framers of our Constitution, in view of the other provisions of our Constitution and those of the Federal Constitution mentioned, did not intend § 23 of Art. VII to apply to compulsory officer service in the Army of the United States for the period of an emergency. If the opinion cites them for any other purpose, I cannot subscribe. The opinion seems to imply that since Mr. Justice Pratt took the judicial oath of office to support the Constitution of the United States (which oath is required by the Federal and State Constitutions) § 23 of Art. VII of our Constitution could not be made to apply to him; that we could not constitutionally prevent a Federal military officer from holding a state office at the same time. Whether it could or not need not be decided. Suffice it to say that § 23, Art. VII was not intended to prevent such dual holding.

Nor do I concur in the implication that *McCoy* v. *Board of Supervisors of Los Angeles County*, 18 Cal. 2d 193, 114

P. 2d 569, is a correctly reasoned case under the language of our Constitution. That case founded its decision on the theory that there was a severance from the State office but that the legislature had given the officer called to military duty a preferred right to fill the vacancy or regain his office after his period of duty with the army had ceased. Under that reasoning I think there would be a vacancy in the office to which Mr. Justice Pratt was elected and it would be required to be filled as provided in § 10 of Art. VII, and not otherwise. The legislature could not pass an act permiting a vacancy to be filled by the former encumbent returning and demanding or requesting it. Chap. 105, Laws of Utah 1941, neither aided § 23, Art. VII nor affected § 10, Art. VII. As a legislative enactment it would not enlarge the intendment of the Constitution. What it really accomplished was to put its State officers who were called into the Army on a leave of absence status if they requested it. It recognized that it would be impossible in most cases to perform the duties of both the State and Federal office. Unless the encumbent of the State office could place himself on a leave of absence status from the office his functional absence might itself be construed to be an abandonment in fact. Abandonment by a failure to perform the duties of an office is not the type of forfeiture or abandonment which the cases have held took place automatically when a state officer accepted an office under the government of the United States. It also resulted impliedly from Chap. 105, Laws of Utah 1941 that the State would not pay the officer his salary while he occupied an office in the armed forces even though he still occupies the State office, although that result may have followed without Chap. 105 from the mere fact that it would have been impossible to function in the two offices.

I see no necessity of bolstering up the conclusions of the opinion by drawing in a discussion of § 27, Art. VIII of our Constitution which deals with a gubernatorial extension of the 90 day leave from the State permitted by the section. I

think a discussion of what constitutes an "extreme necessity" should be posponed to a time when that question is raised. I am not prepared to say that there could not be a wholesale hegira of State officers into Federal service outside of the State under the aegis of such interpretations of that provision.

I agree that the Constitution is silent as to the right of the Governor to appoint an officer pro tem during the leave of absence of the encumbent. While I have no reason to disagree with the intimation seemingly contained in the opinion that the legislature has power under the Constitution to grant the governor the right to appoint during a leave of absence permitted by Chap. 105, Laws of Utah 1941, a justice pro tem, there is no occasion for deciding such question at this time. Certainly we are under obligation to give the legislature the benefit of every reasonable doubt in resolving the question of constitutionality. This principle applies where the case is argued and submitted. Where the question is not even before us, we should be doubly careful not to conclude that such power was withheld by the constitution.

I see no necessity to discuss the question of what constitutes "disqualification" nor how absence due to disqualification can be filled. It suffices to say that the absence of Mr. Justice Pratt has not caused a vacancy as meant under § 10, Art. VII. The question of whether, by taking leave, Mr. Justice Pratt has disqualified himself as meant by § 27, Art. VIII of the Constitution may be reserved. I am not prepared to concur or dissent in that part of the opinion.

LARSON, Justice (concurring).

I concur in the opinion of Judge YOUNG. I shall, however, elaborate on one point. We all agree the fact that Mr. Justice Pratt has gone into the military service does not create a vacancy in the office, and there can be no one designated to fill that office under the provisions of § 10 of Art.

VII of the constitution dealing with the filling of vacancies. That provision deals with offices that are vacant due to death, resignation or otherwise—that is an office where there is no one who could lawfully occupy the same. Since the office is not vacant but Justice Pratt is temporarily in a position which measurably prevents or disqualifies him from actually participating in consideration of the cases now being heard by the court, Sec. 2 of Art. VIII of the constitution applies. Here the constitution itself provides that when a Justice of the Supreme Court, for reasons which does not vacate his office, cannot reasonably perform the duties thereof, those duties shall be performed by a district judge called in by the other members of the court. The constitution having prescribed how such positions shall be filled in the Supreme Court, it is not within the power of this court, or of the legislature or of the governor to provide for, or otherwise select a person to discharge such duties. The prevailing opinion correctly so holds.

McDONOUGH, Justice (concurring).

I concur. I do so, however, subject to the following observation: I do not consider the portion of the opinion which deals with the power of this court to call in district judges to sit in place of a disqualified member as either holding or intimating that the provision of Chap. 105, Laws of Utah, 1941, which authorizes the governor to appoint a justice pro tempore, is invalid. The question of the validity of such provision need not be determined in order to adjudicate the matter in issue here; nor need we determine the scope of power vested in this court under Sec. 2, Art. VIII of our constitution. Hence I do not desire to express an opinion relative thereto in this case.