29 December, 1943.
HONORABLE W. P. STACY, Chief Justice;
HONORABLE MICHAEL SCHENCK, HONORABLE W. A. DEVIN, HONORABLE M. V. BARNHILL, HONORABLE J. WALLACE WINBORNE, HONORABLE A. A. F. SEAWELL,
HONORABLE E. B. DENNY, Associate Justices.
RALEIGH, NORTH CAROLINA.
MY DEAR SIRS:
A question of great public concern has arisen in the connection with the performance of my duties as Governor of North Carolina, upon which I desire to request the opinion of the Chief Justice and Associate Justices of the Supreme Court of North Carolina.
The question presented is one which affects numerous public officials who have accepted or will accept commissions in the Armed Forces of the United States and who are going into active service as Officers therein.
Honorable Nathan Yelton was heretofore appointed as Comptroller by the State Board of Education, with the approval of the Governor as Director of the Budget, under the provisions of Article 8 of Section IX of the Constitution of this State, and was engaged in the performance of his duties as such at the time he accepted a commission as a Captain in the United States Army and has now been assigned for work with the Allied Military Governments and entered upon the performance of his duties on the 27th day of December, 1943.
Captain Yelton's appointment was made by the President of the United States by authority of H. J. RES. 199, PUBLIC LAW No. 252, SEVENTY-SEVENTH CONGRESS OF THE UNITED STATES, JOINT RESOLUTION SEPT. 22, 1941, 55 STAT. 728, 10 U.S.C.A. SECTION 484, the material parts thereof reading: *Page 847 
"During the present emergency, temporary appointments as officers in the Army of the United States may be made, under such regulations as the President may prescribe, from among qualified persons without appointing such persons as officers in any particular component of the Army of the United States. All persons so appointed as officers shall be commissioned in the Army of the United States and may be ordered into the active military service of the United States to serve therein for such periods of time as the President may prescribe. . . . Provided, That any appointment made under the provisions of this Act, may be vacated at any time by the President and, if not sooner vacated, shall continue during the present emergency and six months thereafter: Provided further, that any person appointed as an officer in the Army of the United States under the provisions of this Act shall receive the same pay and allowances and be entitled to the same rights, privileges, and benefits as members of the Officers' Reserve Corps of the same grade and length of active service: . . ."
Captain Yelton has applied to me as Governor of the State of North Carolina for a leave of absence, on account of entering into military service, under the provisions of Chapter 121 of the Public Laws of 1941, and, as Governor of North Carolina, it is my desire and purpose to grant the leave of absence as requested for the duration of the existing state of war, or until Captain Yelton has been discharged from military service, if I can legally do so. The compensation of Captain Yelton as Comptroller terminated upon his entering active duty as a Captain in the United States Army and the leave of absence if granted will be granted without pay. If this leave of absence can be lawfully granted by me as Governor, it is my purpose, under the authority of Chapter 121 of the Public Laws of 1941, to appoint an acting official as substitute for Captain Yelton for the period of his leave of absence, such appointee to have all the authority, duties, perquisites and emoluments of his principal.
I am in doubt as to whether or not I have the power to grant this leave of absence on account of the question as to whether or not Captain Yelton, in accepting a commission as an Officer in the United States Army, has thereby vacated his office as Comptroller of the State Board of Education by reason of the inhibition against double office holding contained in Article XIV, Section 7 of the Constitution of the State of North Carolina, and, whether or not, under such circumstances, a leave of absence to this official could be granted, or whether or not it would be necessary that his office be treated as vacant and a successor appointed as provided in Section 8 of Article IX of the Constitution.
It may be stated that this same question here presented as to Captain Yelton applies to many other public officials in the State on account of *Page 848 
such officials accepting commissions as Officers in the Armed Forces of the United States.
On account of the paramount importance and emergency of this question, I am constrained to request an opinion of the Chief Justice and Associate Justices in order that the appropriate action may be taken by me with respect to the pending application of leave of absence for Captain Yelton.
I am advised by the Attorney-General that the question presented has not been decided by our Court. I hand you herewith the letter from the Attorney-General, together with a memorandum of authorities presented to me therewith.
 Respectfully yours, J. MELVILLE BROUGHTON, Governor.
29 December, 1943.
SUBJECT: Leave of Absence; Comptroller, State Board of Education; Double Office Holding; Acceptance of a Commission as Captain in the United States Army.
GOVERNOR J. MELVILLE BROUGHTON, RALEIGH, NORTH CAROLINA.
DEAR GOVERNOR BROUGHTON:
I have your letter of December 27, in which you advise that Honorable Nathan Yelton, Comptroller of the State Board of Education, has accepted a commission as Captain in the United States Army and has been assigned for special work with the Allied Military Governments, having entered upon his duties as such on December 27, 1943. You state that this presents the question as to whether or not Captain Yelton can be granted a leave of absence, and also, whether or not it will be possible for the State Board of Education, with the approval of the Governor, to name an Acting Comptroller, or whether his acceptance of a commission terminates his tenure of office, making it necessary to appoint or elect his successor for the unexpired portion of the term of his appointment.
I have today conferred with you about the subject of your letter and advised you that, in my opinion, no satisfactory answer could be secured to this question except through the medium of the opinion of the Chief Justice and Associate Justices of the Supreme Court of North Carolina The identical question has not been presented under the circumstances *Page 849 
of this case to our Court. I am enclosing herewith a copy of the memorandum on this subject from which you will observe that some of the courts of other states have held that the acceptance of a commission of the character accepted by Captain Yelton would prevent him from holding the office under the authority of the State, while in other jurisdictions, the courts have reached a contrary conclusion.
The nearest approach to this question in our State is found In theMatter of J. G. Martin, 60 N.C. 153, in which, at the request of Governor Zebulon B. Vance, an opinion of the Justices was rendered, in which it was held that the acceptance of the office of Brigadier General under the Confederate States vacated the office of Adjutant General of North Carolina held by the person accepting the Confederate States' office. This case, however, was decided on the basis of incompatibility of the two offices, although the constitutional provision then existing was substantially similar to Article XIV, Section 7, of our Constitution.
On account of the great importance and emergency of this question, I feel confident that the Chief Justice and Associate Justices of the Supreme Court, at your request, would be willing to render you their advisory opinion, and I recommend this course.
Respectfully yours, HARRY MCMULLAN, HM/e Attorney-General.
RALEIGH, N.C. 12 January, 1944.
To His Excellency; J. MELVILLE BROUGHTON, Governor of North Carolina:
Your request for an advisory opinion in the matter of Nathan Yelton poses the question whether the comptroller of the State Board of Education may be granted a leave of absence under ch. 121, Public Laws 1941, he having accepted a temporary captaincy in the United States Army, and still retain his present position. Also involved is the broader question whether, in like circumstances, any State official may be given a leave of absence to accept a temporary officer's commission in the United States Army or Navy without perforce vacating his civil office.
The question is an important one and ought to be settled in the interest of continued, efficient, orderly government. Its solution lies in harmonizing the statute law with the Constitution, if this can be done.
I. THE MEANING OF CH. 121, PUBLIC LAWS 1941:
The following pertinent provisions of ch. 121, Public Laws 1941, are clear and explicit: "Section 1. Any elective or appointive State official *Page 850 
may obtain leave of absence from his duties for military or naval service, protracted illness, or other reason satisfactory to the Governor, for such period as the Governor may designate. Such leave shall be obtained only upon application by the official and with the consent of the Governor. The official shall receive no salary during the period of leave. . . . The period of leave may be extended upon application to and with the approval of the Governor if the reason for the original leave still exists, and it may be shortened if the said reason shall unexpectedly terminate: Provided, that no leave or extension thereof shall operate to extend the term of office of any official beyond the period for which he was elected or appointed. If, by reason of the length of the period of absence or the nature of the duties of the official, the Governor deems it necessary, the Governor may appoint any citizen of the State, without regard to residence or district, as acting official or substitute for the period of the official's leave of absence, such appointee to have all the authority, duties, perquisites, and emoluments of his principal."
(Sections 2 and 3 contain similar provisions in respect of county and municipal officials.)
Thus it will be seen the General Assembly has spoken on the subject, and, to the extent of its legislative authority, has taken care of the situation. There would be no question of your right to grant the comptroller a leave of absence, and to appoint a substitute or acting official in his stead, during his absence, if he were going into the Army as a private and not as an officer. Critchlow v. Monson, 102 Utah 378,131 P.2d 794. The constitutional question which has occasioned your request for an advisory opinion arises only by reason of his acceptance of a temporary officer's commission. It is conceded that the acceptance of a second office which is forbidden or incompatible with the office already held operates ipso facto to vacate the first. Barnhill v. Thompson,122 N.C. 493, 29 S.E. 720; Whitehead v. Pittman, 165 N.C. 89,80 S.E. 976; In re Martin, 60 N.C. 153; Annotation 53 A.L.R., 595.
II. THE EFFECT OF ART. XIV, SEC. 7, OF THE CONSTITUTION:
The Constitution, Art. XIV, sec. 7, provides: "No person who shall hold any office or place of trust or profit under the United States, or any department thereof, or under this State, or under any other State or government, shall hold or exercise any other office or place of trust or profit under the authority of this State, or be eligible to a seat in either house of the General Assembly: Provided, that nothing herein contained shall extend to officers in the militia, justices of the peace, commissioners of public charities, or commissioners for special purposes."
Under this section, which is intended and designed to prevent or inhibit double office-holding, except in certain instances, it is not permissible *Page 851 
for one person to hold two offices at the same time. Groves v. Barden,169 N.C. 8, 84 S.E. 1042; Harris v. Watson, 201 N.C. 661, 161 S.E. 215;Brigman v. Baley, 213 N.C. 119, 195 S.E. 617; In re Barnes, 212 N.C. 735,194 S.E. 499; Doyle v. Raleigh, 89 N.C. 133. It has been said, however, that where the second office is temporary, or the appointment thereto does not "require continuous public service," no constitutional offense is thereby incurred. Grimes v. Holmes, 207 N.C. 293,176 S.E. 746; S. v. Wood, 175 N.C. 809, 95 S.E. 1050; S. v. Smith,145 N.C. 476, 59 S.E. 649. Such would seem to be the case here.
Furthermore, it will be noted that "officers in the militia" are expressly excluded from the operation of this section. As all able-bodied male citizens of the State, between the ages of 21 and 40 years, who are citizens of the United States and who are not averse to bearing arms from religious scruples, are liable to duty in the militia, Const., Art. XII, it was evidently deemed unjust to single out State officials and require them to forfeit their offices if they accepted commissions in the militia while on active military duty in defense of the commonwealth. So it was provided that the inhibition against double office-holding should "not extend to officers in the militia." And while this designation, strictly speaking, may or may not reach as far as "temporary appointments as officers in the Army during the present emergency," the reason for the limitation of the operation of the section would seem to require that it "not extend to" such temporary officers in the Army. Certainly the spirit of the Constitution would envisage that it fall short of such operation. "The meaning of a constitution is to be found, not in a slavish adherence to the letter, which sometimes killeth, but in the discovery of its spirit, which giveth life." Opinions of the Justices, 204 N.C. p. 813, 172 S.E. 474. If need be, the letter gives way to promote the equity of the spirit. An inhibition or prohibition usually extends no farther than the reason on which it is founded. Cessante ratione, cessat ipsa lex.
"Historically the `militia' or `militiamen' have been held to comprehend every temporary citizen-soldier who in time of war or emergency forsakes his civil pursuits to enter for the duration the active military service of his country" — Douglas, J., in S. v. Grayston, 349 Mo., 700,163 S.W.2d 335.
It will also be observed that the official on leave is to receive no salary during the period of his absence. Nor is he expected to perform any of the duties of his office while on leave. Thus, neither the spirit nor the reason for the constitutional inhibition against double office-holding is to be offended. "The reason of the law is more potent in its interpretation that the language used to express it. Reason is its soul; language *Page 852 
its outward form." Warrenton v. Warren County, 215 N.C. 342, loc. cit. 348, 2 S.E.2d 463.
Moreover, the services in the Army of the officer on leave are to be temporary and not permanent. This saves the case from incompatibility, Inre Martin, supra, which would undoubtedly result, if the services contemplated were those of the professional, permanent soldier, as distinguished from those of the temporary citizen-soldier. S. v. Grayston,supra; Annotations 26 A.L.R., 142, and 132 A.L.R., 254.
The instant provision was never intended to discourage public officials from assuming military leadership in time of emergency. Critchlow v.Monson, supra. Officers in the militia are liable to be called out to suppress riots or insurrection, "and to repel invasion." Const., Art. XII, sec. 3. Temporary officers in the Army are likewise subject to military duty "to repel invasion" during a war emergency. To say that one may serve as a private in the Army during war time and hold his State position, but if he accept a temporary officer's commission he must renounce his civil office, would be to impose an unequal sacrifice on State officials who seek promotion in the Army.
It was the purpose of the proviso in this section to permit public officials to serve as officers in the militia without forfeiting their civil office, and it is reasonable to suppose that as the interdiction in the first part of the section was not intended to extend to civil officers serving as officers in the militia, for precisely the same reason it was not intended to extend to civil officers holding temporary commissions in the Army during a war emergency, as they both fall in the same category. Both would be temporarily engaged in bearing arms in defense of the commonwealth and in like positions. To declare otherwise would be to say that an unwarranted discrimination inheres in the Constitution, whereas the pervading principle of the organic law is equality of treatment. The thesis of the Constitution is that all similarly situated are entitled to like treatment from the government they support and defend. Leonard v. Maxwell,216 N.C. 89, 3 S.E.2d 316. Equality and fair play are implicit in the Constitution. Such is its theme. "A constitution should not receive a technical construction as if it were an ordinary instrument or statute. It should be interpreted so as to carry out the general principles of the government, and not defeat them" — Brown, J., in Jenkins v. Board ofElections, 180 N.C. 169, 85 S.E. 289.
Substantially the same question as here presented has arisen in a number of the States having constitutional provisions in respect of dual office-holding, quite similar to ours, and yet with sufficient variations perhaps to render them distinguishable. At any rate, opposite conclusions have been reached in the different States with variant reasons assigned therefor. On the one side may be listed the States of Pennsylvania, *Page 853 Commonwealth v. Smith, 343 Pa., 446, 2 A.2d 440; Arizona, Perkins v.Manning, 59 Ariz. 60, 122 P.2d 857; and Illinois, Fekete v. East St.Louis, 315 Ill. 58, 145 N.E. 692, 40 A.L.R., 650. On the other, may be designated the States of Florida, Re Advisory Opinion, 150 Fla. 556,8 So.2d 26, 140 A.L.R., 1481; California, McCoy v. Los Angeles County,18 Cal.2d 193, 114 P.2d 569; Missouri, S. v. Grayston, supra; Utah,Critchlow v. Monson, supra; Texas, Carpenter v. Sheppard, 135 Tex. 413,145 S.W.2d 562; and West Virginia, S. ex rel. Thomas v. Wysong, ___ W. Va., ___, 24 S.E.2d 463 (decided 23 February, 1943). Most of the recent cases have been collected in Annotation 140 A.L.R., 1499. Thus, in its final analysis, we are left to apply our own Constitution to the facts in hand, and to say what it means. The authorities elsewhere, while enlightening, are not controlling.
Accordingly, you are advised that the question first above propounded is answered in the affirmative.
 Respectfully, WALTER P. STACY, Chief Justice;
 MICHAEL SCHENCK, W. A. DEVIN, M. V. BARNHILL, J. WALLACE WINBORNE, A. A. F. SEAWELL, EMERY B. DENNY,
 Associate Justices.