[S. F. No. 16563. In Bank.—June 30, 1941.]

CHARLES A. McCOY, Petitioner, v. BOARD OF SUPERVISORS OF THE COUNTY OF LOS ANGELES et al., Respondents.

194

Ivan L. Hiler for Petitioner.

J. H. O'Connor, County Counsel, S. V. O. Prichard and Harold W. Kennedy, Assistant County Counsel, and W. B. McKesson, Deputy County Counsel, for Respondents.

Spencer C. Olin, Andrew J. Copp, Jr., and Emmett E. Doherty, *Amici Curiae,* on behalf of Respondents.

PULLEN, J., *pro tem.*—Petitioner, a taxpayer, seeks a writ of mandate commanding respondent Board of Supervisors of the County of Los Angeles to declare vacant the office of Chief Engineer of Building and Construction of that county, and to appoint another to fill the vacancy.

The facts are presented by stipulation. William J. Fox was a major in the Marine Corps Reserve, a component of the United States Marine Corps, available for active duty. At the same time he was Chief Engineer of Building and Safety of the County of Los Angeles. On October 1, 1940, pursuant to federal statutes and the regulations governing the Marine Corps Reserves, he was ordered by the Secretary of the Navy to enter active service for a twelve months period of training and duty with the United States Marine Corps. As a duly commissioned reserve officer he was obliged to and did obey the order of the Secretary of the Navy, and ever since said first day of October he has been in active Naval and Marine Corps service. About September 27, 1940, he applied to respondent board of supervisors for a leave of absence without pay or duty for the period of his absence from his position as chief engineer and while in Naval and Marine Corps active service, with the right to be restored to his civil position, or a position of like seniority, status and pay, upon the termination of such active service. The application was approved

and granted by respondent board prior to October first, and since that date Major Fox has performed no duties under said civil employment and has neither received nor been entitled to receive any pay whatsoever from the county of Los Angeles on account of said civil employment position.

The Constitution of this state, article IV, section 20, provides that "no person holding any lucrative office under the United States, or any other power, shall be eligible to any civil office of profit under this state. . . . " Petitioner contends that the position of Chief Engineer of Building and Safety of the County of Los Angeles is a "civil office of profit under this state", and that the office of major in the Marine Corps Reserve is a "lucrative office under the United States", as those terms are employed in the constitutional provision, and that therefore Major Fox forfeited his county position when he accepted the federal office. Respondents deny that there has been a forfeiture. They say that even if it be assumed that the position of chief engineer is an office "under this state", as distinguished from a mere local county position, Major Fox is not holding that office in violation of the constitutional provision while he is on leave of absence without pay for the term of his enforced marine and naval duty.

The arguments offered in support of this contention are persuasive. At the time Major Fox was called to active service a limited national emergency, recently declared to be unlimited, had been proclaimed by the President of the United States. The citizen groups comprising the reserve Army, Naval and Marine forces of the country were rapidly being mobilized for active duty in the national defense, and this state was endeavoring to co-operate to the fullest extent in promoting the federal aims and legislation. As an encouragement to publicly employed citizens to respond to the call to patriotic service, the state legislature enacted, as an emergency measure, section 152.5 of the State Civil Service Act [Deering's Gen. Laws, Act 1404], also known as chapter 2 of the Fourth Extraordinary Session of the legislature in 1940, approved October 2, 1940, providing as follows: "Whenever the United States is engaged in war or whenever the Governor finds and proclaims that an emergency exists in preparing for the national defense, any permanent civil service employee of the State, in good standing, shall be en-

titled to a leave of absence for military service. . . . '' Thus, in previously granting leaves of absence to Major Fox and those similarly situated the board of supervisors but anticipated the will of the legislature. At the 1941 legislative session further emergency measures were passed relating to resignations of county officers, deputies, assistants, and employees to serve in the armed forces of the United States, and their right to return to the public service (sections 4026, 4026.1, 4026.2 and 4026.3 of the Political Code). These emergency measures show clearly that it was and is the policy of the legislature to expedite and encourage the enlistment of public employees in the armed forces of the United States, and to insure the restoration of their positions to them upon return to civil life. A study of similar enactments in other jurisdictions, of various soldiers' and sailors' relief acts, and of the trend of judicial decision, reveals a growing recognition of the necessity of protecting those in military or naval service against the loss of civil rights, and of the potency of a national emergency to justify broad and appropriate relief. Not only have state and national legislative bodies been alert to meet the need for special protective measures, but state and federal courts have kept pace and have evinced a firm intention to take a liberal view of these emergency enactments in order that their protective purposes may be fulfilled without undue imposition of constitutional limitations or hindrance through narrow judicial construction. (88 A. L. R., note, p. 1519.)

It was never the intent or purpose of article IV, section 20, of the Constitution of this state to discourage public employees from rendering military or naval service, to deter them from answering, or induce them to evade such a call, or to tend to impede the federal government in its effort to mobilize the citizenry, or interfere with efforts to meet a major emergency. The constitutional provision can neither be construed nor applied to effect such a result. ■ Its primary object, as declared in the early case of *People* v. *Leonard*, 73 Cal. 230 [14 Pac. 853], is to prohibit a conjunction of a federal and a state office of profit in the same person, without any condition whatever; that is, to prevent ''dual office-holding by one person under two separate and distinct governments, and the separation of the allegiance justly due one by its officers from that due to another power.'' ■ The reason for the

prohibition ceases and the constitutional provision is inapplicable in a case where the duties, compensation and rights of the holder of a state office, and his opportunity to exert any influence therein, are suspended and inchoate while he is rendering temporary patriotic service to his country under a military or naval commission.

As said by the court in *State* v. *Joseph,* 143 La. 428 [78 So. 663, L. R. A. 1918E, 1062], where a similar constitutional provision was under consideration: ''Should article 164 of our Constitution be interpreted to mean that a citizen, holding a state office, upon whom, under the Constitution and laws of the United States, additional duties are imposed by the President, in aid of the raising and maintenance of an army for the prosecution of a great and necessary war, forfeits his office by reason of his acceptance of that which it would be unlawful and unpatriotic for him to decline? We think not, and are of the opinion that to answer otherwise would be an unwarranted reflection alike upon the intelligence and the patriotism of those by whom the article in question was incorporated in the Constitution.'' See, also, *Kennedy* v. *Cook* 285 Ky. 9 [146 S. W. (2d) 56]; *Carpenter* v. *Sheppard,* 135 Tex. 413 [145 S. W. (2d) 562].

While Major Fox is on leave of absence from his county position, he is not performing any of the duties or exercising any of the powers of that office, or performing any state or county function, or claiming or drawing any compensation. Under the circumstances shown, it can only be concluded that during the period of his leave he is not holding or claiming eligibility to a ''civil office of profit under this state'', as that term is used in the constitutional provision, but that his occupancy or holding of such office is suspended. His position is analogous to that in which the court found a retired army officer to be in the early case of *Reed* v. *Schon,* 2 Cal. App. 55 [83 Pac. 77]. In that case the election of John L. Schon, as Mayor of San Diego, was contested on the ground that he was holding the incompatible office of a first lieutenant of infantry of the United States Army, retired with the rank of captain, in violation of article IV, section 20, of the Constitution. The court found that the rank or position of Captain Schon, retired, was not a lucrative office, and refused to attribute to the constitutional provision

an intention of disfranchising a class of eminently deserving citizens. The court recognized that the reason for the prohibition was that an officer of the state, presumably employed to devote himself exclusively to the duties of his office, should not be permitted to assume other duties incompatible therewith, but it concluded that the position of retired army captain carried no duties incompatible with the state office, saying: "It also seems clear to us that, under the provisions of the statute cited, the position of the defendant is a mere sinecure, without any duties attached to it; and hence that it cannot properly be called an office. . . . We see no reason, therefore, in the language used, to attribute to the constitutional provision an intention of disfranchising a class of eminently deserving men and depriving the state of their services."

From the conclusion that the occupancy or holding of the county office by Major Fox is suspended during the period of his leave of absence, it does not follow that the office must be declared vacant. The effect of a leave of absence was considered in the case of *Whitehead* v. *Davie*, 189 Cal. 715 [209 Pac. 1008], and this court there approved the theory that under certain circumstances it may be held that one who is on leave of absence is not actually holding an office but is merely retaining the right to reoccupy such office at the termination of his period of leave.

In the Whitehead case the question arose of whether a battalion chief might hold the position of fire chief without violating the Oakland City Charter, which provided that no person holding an office or position under the city government should be eligible to hold any other elective or appointive office under the city. In practice, if a battalion chief was to be appointed to the position of chief of the fire department, he would take a leave of absence as battalion chief for the purpose of retaining his retirement right as a member of the fire department. In passing upon the effect of the leave and concluding that there was no violation of the charter provision, this court said: "It is contended that the effect of this arrangement is to permit the chief of the fire department to hold two offices at the same time, that of chief of the fire department and that of battalion chief. This suggestion entirely overlooks the purpose of the so-called leave of absence and the civil service rules with relation thereto.

These rules mean nothing more or less than that during the period while the battalion chief is acting as chief of the fire department, and thus continues as a member of the department, his position of battalion chief shall be deemed to be temporarily filled by his successor, and he retains the right to permanently occupy that place whenever his incumbency as chief of the fire department is terminated. The chief of the fire department did not hold two positions or draw two salaries or perform the duties of the two officers because of such leave of absence. The civil service rule in question is merely for the purpose of establishing that the chief of the fire department is continuously eligible to reappointment as a permanent battalion chief and also that his successor is appointed to fill a vacancy in that permanent employment existing by reason of the temporary transfer of the battalion chief to the higher office of chief of the fire department.''

The charter of the county of Los Angeles, paragraph 10, section 34, article IX, has been amended to provide that `` . . . all persons holding positions subject to the provisions of this article . . . who shall have entered the armed forces of the United States during war or national emergency . . . and who shall have been honorably discharged or placed on the inactive or reserve list or relieved from such service with a certificate of satisfactory service, shall be reinstated without loss of status, seniority or efficiency ratings to the permanent positions held by them prior to entry into such Federal service. . . . '' (Senate Concurrent Resolution No. 2, Stats. 1941.) This fortifies the view that the effect of the leave of absence granted to Major Fox was not to create a vacancy in the county office, but was merely to suspend his occupancy of that office for the period of his absence, leaving him with certain inchoate rights which he may assert upon the termination of his federal service.

The alternative writ of mandate heretofore issued herein is discharged, and the application of petitioner for a peremptory writ is denied.

Carter, J., Shenk, J., Traynor, J., Edmonds, J., and Gibson, C. J., concurred.