[Sac. No. 5615. In Bank. Dec. 23, 1943.]

THE PEOPLE ex rel. LEON HAPPELL, Respondent, v. RANSE R. SISCHO, Appellant.

Gilbert H. Jertberg for Appellant.

Robert W. Kenny, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Respondent.

THE COURT—This is a proceeding in quo warranto brought pursuant to the provisions of Chapter V, Title 10, Part 2, of the Code of Civil Procedure to test the claim of Ranse R. Sischo to the office of Judge of the Superior Court in the County of Merced. Defendant Sischo's title to the office depends upon the question as to whether there was a

vacancy in the office at the time of his asserted appointment to it, and the existence of a vacancy is in turn dependent upon the legal effect to be attributed to the fact that the previously elected and qualified incumbent, the Honorable James D. Garibaldi, accepted a temporary or reserve commission in the Army of the United States and thereafter, in obedience to the orders of competent military authority, departed from the State of California, and failed to perform any judicial duties for more than ninety days.

The trial court, on stipulated evidence, found that the office had not become vacant in any sense and entered judgment enjoining Judge Sischo from exercising its functions.

Defendant has appealed and as grounds for reversal of the judgment urges four propositions which he states as follows:

"A. The fact that Judge Garibaldi was commissioned as an officer, to wit, a captain, in the United States Army automatically created a vacancy in the office held by him. [See Cal. Const., art. IV, sec. 20.]

"B. The acceptance by Judge Garibaldi of such commission is deemed to be a resignation from his office as Superior Judge. [See Cal. Const., art. VI, sec. 18.]

"C. The failure of Judge Garibaldi to discharge the duties of his office as said judge for a period of three consecutive months automatically created a vacancy in the office held by him. [See Pol. Code, sec. 996, subd. 7.]

"D. The absence of Judge Garibaldi from the State of California for more than sixty consecutive days *ipso facto* operated as a forfeiture of his office. [See Cal. Const., art. VI, sec. 9; Pol. Code, sec. 996, subd. 6.]"

James D. Garibaldi was elected to the office in question (Judge of the Superior Court of the State of California in and for the County of Merced) in 1938 for the term expiring January 8, 1945. He qualified and entered upon the performance of the duties of the office. On December 7, 1941, territorial possessions of the United States of America were attacked by armed forces of the Empire of Japan, and within a few days thereafter our nation was in a state of war not only with Japan but also with Germany and Italy. Unwillingly, we had been drawn into a world-wide conflict for survival, precipitated by the aggressor nations, Germany, Italy, and Japan. At the beginning of the war Judge Garibaldi

held no commission or other membership in any organized military or naval establishment. By the terms of the Selective Training and Service Act of 1940 (50 U.S.C.A., App., secs. 301-318) and the regulations promulgated pursuant thereto, he was at all times concerned, as a judge of a state court, entitled to claim deferment from active training and service duty under that act. On June 20, 1942, presumptively by reason of special skills and other qualifications on his part, he was tendered, and he accepted, a temporary or reserve officer commission in the United States Army Air Corps. Shortly thereafter, on July 4, 1942, he was ordered to active duty at Merced, California, and upon going on active duty under orders on July 4 he became entitled to pay for his services at a rate in excess of $500 per annum. Throughout the period of time involved since that date he has been under the orders of competent military authority and pursuant thereto has remained on active duty and has continued to receive compensation at such rate. He has performed no services as a superior court judge since some time in July, 1942, and has accepted no pay as a judge since July 31, 1942. On or about October 16, 1942, in obedience to competent army orders, Judge Garibaldi left California and reported to a post in New Mexico. Pursuant to further orders, he returned to California on November 16 and remained here until November 30, when he was again sent to New Mexico, where he remained until after defendant's purported appointment.

On December 31, 1942, the Honorable Culbert L. Olson, as Governor of California, issued a commission to the defendant Sischo, purporting to appoint him to the mooted office "vice James D. Garibaldi, ineligible." It is stipulated that Judge Sischo possessed all of the qualifications required by law for appointment to the office and to his credit it is noted that the record before us discloses the avowal, in open court, by his counsel, of an intention expressed by Judge Sischo to the effect that in the event he was held entitled to the office he would offer his resignation therefrom upon Judge Garibaldi's return prior to expiration of the appointive term. A further stipulation was made that Judge Sischo, on January 2, 1943, took the oath of office required of judges of the superior court and purported to enter upon the duties of the office.

█ 1. *Inapplicability of Section 20 of Article IV of the State Constitution.*

Section 20 of article IV of the California Constitution provides that: "No person holding any lucrative office under the United States, or any other power, shall be eligible to any civil office of profit under this State; *provided*, that officers in the militia who receive no annual salary, local officers, or Postmasters whose compensation does not exceed five hundred dollars per annum shall not be deemed to hold lucrative offices." On behalf of defendant it has been contended that the quoted section ipso facto operated to forfeit all of Judge Garibaldi's right and title to his judicial office immediately upon his being placed on active and compensated duty in the United States Army forces.

In the case of *McCoy* v. *Board of Supervisors*, 18 Cal.2d 193 [114 P.2d 569], we were confronted with a problem similar in basic principles but different in the precise question to be determined. That case was a proceeding in mandamus "to compel a board of supervisors to declare vacancy in office and to fill the vacancy" (p. 194 of 18 Cal.2d). The purpose of the proceeding was to determine whether "the Chief Engineer of Building and Safety of the County of Los Angeles," William J. Fox, who was then a major (now a colonel) in the United States Marine Corps Reserve, forfeited his state office (the position mentioned was deemed to be a state office) when, having obtained a leave of absence from the board of supervisors, he entered active duty with the Marine Corps. It was there urged that by going on such active duty he completely forfeited his office and that it became vacant in the sense of a complete and permanent vacancy. We were not there considering any question as to the right of the appointing power to fill the vacancy temporarily during the ordered absence of the incumbent. The controlling question actually decided was that by entering on active duty under the circumstances there depicted Colonel Fox did not forfeit his office. This court stated (p. 196 of 18 Cal.2d): "It was never the intent or purpose of article IV, section 20, of the Constitution of this state to discourage public employees from rendering military or naval service, to deter them from answering, or induce them to evade such a call, or to tend to impede the federal government in its effort to mobilize the citizenry, or interfere with efforts to meet a major emergency. The constitutional provision can neither be construed nor applied to effect such a result. . . . [P. 197] ·Under the circum-

stances shown, it can only be concluded that during the period of his leave he is not holding or claiming eligibility to a 'civil office of profit under this state', as that term is used in the constitutional provision, but that his occupancy or holding of such office is suspended.''

2. *Inapplicability of Section 9 of Article VI of the State Constitution and the Applicability of Section 395 of the Military and Veterans Code.*

The above-quoted principles from the McCoy case apply with equal force in this case now before us. It is argued, however, that the decision in that case was predicated upon the fact that Colonel Fox obtained a leave of absence, and that it can have no application to the present case since the provisions of section 9, article VI, of the Constitution prevented the Legislature from granting Judge Garibaldi a leave of absence. The last-cited section provides that ''The Legislature shall have no power to grant leave of absence to any judicial officer; and any such officer who shall absent himself from the State for more than sixty consecutive days shall be deemed to have forfeited his office. . . .'' But if the provisions of section 20 of article IV ''can neither be construed nor applied'' to effect the result of discouraging public employees from rendering military or naval service, or of tending ''to impede the federal government in its effort to mobilize the citizenry,'' then neither should the provisions of section 9 of article VI be given any such effect. In other words, we do not believe that by the provisions of section 9 of article VI it was ever intended to preclude the Legislature from granting, or judges from being absent on, *military leaves* of absence *when they are serving in the armed forces of the Nation* and are subject to military orders. A reading of the constitutional debates (The Debates in the Convention of California, J. Ross Browne (1850); California Constitutional Convention, Willis and Stockton (1881)) discloses no intention by the delegates to so limit the Legislature.

It is apparent that the Legislature of this state does not believe that it is so limited. The provisions of section 395 of the Military and Veterans Code contain no exception as to judicial officers. That section provides: *''Every officer* and employee *of the State,* or of any county, municipal corporation, school district, irrigation district, water district, or other district, *who is a member of* the National Guard or Naval

Militia, or a member of *the reserve corps or force* in the Federal military, naval, or marine service, *shall be entitled to absent himself from his duties or service while engaged in the performance of ordered military or naval duty* and while going to and returning from such duty. [Italics added.]

"If he has been in the service of the State or of any one of the political subdivisions enumerated in this section for a period of not less than one year prior to the date upon which his absence begins, no such officer or employee shall be subjected by any person directly or indirectly by reason of such absence to any loss or diminution of vacation or holiday privilege or be prejudiced by reason of such absence with reference to promotion or continuance in office, employment, reappointment to office, or reemployment.

"During the absence of any such officer or employee, while engaged in the performance of ordered military or naval duty as a member of the National Guard, Naval Militia, or reserve corps or force in the Federal military, naval, or marine service, he shall receive his salary or compensation as such officer or employee, if the period of such absence in any calendar year does not exceed thirty days and if he has been in the service of the State or of any one of the political subdivisions enumerated in this section for a period of not less than one year prior to the date upon which his absence begins."

It is, to be noted that in drafting the above quoted law the Legislature very carefully and strictly confined its application to state officers and employees "while engaged in the performance of ordered military or naval duty and while going to and returning from such duty." Such a military leave is substantially different from an ordinary leave of absence. It amounts, in effect, to an interruption of the tenure or exercise of the office. It does not authorize the employee to absent himself from his civilian duties for any purpose personal to himself or under any circumstance or at any time when the projected absence is within his control. He is given no discretion whatsoever as to the duration of his absence or as to his activities during the absence. Rather does such "military leave" merely recognize the paramount obligation, immediate or potential, of all citizens to render military service in the armed forces of the Nation during times of war or declared national emergency.

There is in the Constitution no provision expressly forbid-

ding the Legislature to grant "military leaves" to judges and we do not believe that section 9 of article VI should be construed to have that effect. In *Martin* v. *Riley*, 20 Cal.2d 28 [123 P.2d 488], at pages 34 et seq., this court declared a distinction between civil officers and military officers. The same distinction may be drawn between civil leaves of absence and military leaves of absence. While leaves of absence may not be granted to judges for reasons personal to themselves there does not appear to be any compelling reason why they alone, of all the officers and employees of the state, should be discouraged from rendering military or naval service in time of war, and prohibited therefrom, under penalty of forfeiture of office.

3. *Laws Protecting the Civil Rights of Public Employees in the Armed Forces.*

As to the attitude of state governments, and courts generally, on the question of public employees entering the military services, this court said in the McCoy case (p. 196 of 18 Cal.2d) : "These emergency measures [referring to certain measures passed at the 1941 legislative session] show clearly that it was and is the policy of the legislature to expedite and encourage the enlistment of public employees in the armed forces of the United States, and to insure the restoration of their positions to them upon return to civil life. A study of similar enactments in other jurisdictions, of various soldiers' and sailors' relief acts, and of the trend of judicial decision, reveals a growing recognition of the necessity of protecting those in military or naval service against the loss of civil rights, and of the potency of a national emergency to justify broad and appropriate relief. Not only have state and national legislative bodies been alert to meet the need for special protective measures, but state and federal courts have kept pace and have evinced a firm intention to take a liberal view of these emergency enactments in order that their protective purposes may be fulfilled without undue imposition of constitutional limitations or hindrance through narrow judicial construction."

Many cases could be cited to show that this policy has been even more pronounced generally in the Nation since the McCoy case decision than before it. The case of *Baker* v. *Dixon* (Sept. 28, 1943; Court of Appeals of Kentucky), —— Ky. —— [174 S.W.2d 410], deals with an inductee's rights and

hence might be distinguished to some extent on that ground, but as in its discussion of the problem it declares the weight of authority and epitomizes many of the more recent cases which deal with commissioned personnel, we quote from it (p. 412 of 174 S.W.2d):

"The same question has been presented to courts of other states, and the decisions thereon are in conflict, although the vast majority are in conformity with our opinion. In *Re Opinion of Justices*, 307 Mass. 613, 29 N.E.2d 738, it was held that the simultaneous holding of the offices of Justice of the Superior Court of Massachusetts and of member of local draft or appeal board under the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix § 301 et seq., was not within the prohibition of the Massachusetts Constitution, providing that no person who holds a judicial office under the United States shall hold any judicial office of the Commonwealth of Massachusetts, and such simultaneous holding of the offices there under consideration did not violate any principle of the common law with reference to the holding of incompatible offices. In *Martin* v. *Smith*, 239 Wis. 314, 1 N.W.2d 163, 140 A.L.R. 1063, it was held that the President of the State University was not prohibited from serving as an administrator of the Selective Training and Service Act under the constitutional provision that: 'No . . . person holding any office of profit or trust under the United States . . . , shall be eligible to any office of trust, profit or honor in this state.' Const., Wis. art. 13, § 3. In *Re Advisory Opinion to Governor*, 150 Fla. 556, 8 So.2d 26, 140 A.L.R. Annotation p. 1481, it was held that the induction of the sheriff of a county as Captain into the United States Army Reserve does not constitute the holding or the exercise of the functions of an officer under the government of the United States, so as to disqualify him from holding an office under a constitutional provision that: 'No person holding or exercising the functions of any office under any foreign Government, under the Government of the United States, or under any other State, shall hold any office of honor or profit under the government of this State.' Const. Fla. Art. 16, § 15. The decision in that particular instance was based upon the fact that militia officers were excepted from the constitutional provision, even as they are in our own jurisdiction; and that opinion further holds that the induction of a county super-

intendent of public instruction into the military service of the United States is governed by the same consideration. In the case of *McCoy* v. *Board of Supervisors of Los Angeles County,* 18 Cal.2d 193, 114 P.2d 569, it was held that the County Engineer did not vacate his office when he was ordered to active duty as a Major in the Marine Corps Reserve of the United States, under the constitutional provision that: 'No person holding any lucrative office under the United States, or any other power, shall be eligible to any civil office of profit under this State.' Const. Cal. Art. 4, § 20. The Court commented that the occupancy by the incumbent was merely suspended and the office was not vacated. In *State ex rel. McGaughey* v. *Grayston,* 349 Mo. 700, 163 S.W.2d 335, it was held that a Circuit Judge who was called into the military service of the United States as a Colonel in the National Guard, did not thereby vacate his position, since he did not become the holder of an office of profit within the meaning of a constitutional provision that: 'No person holding an office of profit under the United States, shall, during his continuance in such office, hold any office of profit under this State.' Mo.R.S.A. Const. Art. 14, § 4. The opinion pointed out that professional service in the regular Army would be incompatible with a civil office, but that temporary military service rendered to meet the exigencies of a military emergency. is not incompatible with holding civil office under the State. In *Gullickson* v. *Mitchell,* 113 Mont. 359, 126 P.2d 1106, the Court held that induction into the military service of the United States did not vacate the office of State Attorney General. In *State ex rel. Thomas* v. *Wysong,* —— W.Va., —— [24 S.E.2d 463], it was held that a person holding a temporary appointment as an officer in the United States Army in time of war, as distinguished from a professional soldier, did not render him ineligible to hold the office of Attorney General under a constitutional provision similar to ours.

"The thoughts permeating the opinions in the above-styled cases are likewise upheld by the Supreme Court of the United States, as expressed in *Carpenter* v. *Sheppard,* 135 Tex. 413, 145 S.W.2d 562, in which case a writ of certiorari was denied in 312 U.S. 697, 61 S.Ct. 734, 85 L.Ed. 1132. Therein it was held that the Chairman and Executive Director of the State Unemployment Compensation Commission of the State of Texas did not vacate his office when he was called into the

service and appointed a Major in the United States Army under a State constitutional provision to the effect that, 'No member of Congress, nor person holding or exercising any office of profit or trust, under the United States, or either of them, or under any foreign power, shall be eligible as a member of the Legislature, or hold or exercise any office of profit or trust under this State.' Vernon's Ann. St. Tex. Const. art. 16, § 12. In *Critchlow* v. *Monson* [102 Utah. 378], 131 P.2d 794, the Court held that a constitutional provision to the effect that, 'No person, while holding any office under the United States' government, shall hold any office under the State government', Const. Utah, art. 7, § 23, was not directed against officers in the military service of the United States, who are to serve only for the duration of the war, and who will return to their civil pursuits on the cessation of hostilities. This Court in *Kennedy* v. *Cook*, 285 Ky. 9, 146 S.W.2d 56, 132 A.L.R. 251, did not have the precise question before it, but therein we held that a Captain of the National Guard inducted into the military service of the United States under the National Defense Act, 32 U.S.C.A. § 81 et seq., did not forfeit his position as Circuit Clerk. The service for the Federal Government in that case was mere training and for the duration of one year only, and during which time the office holder was serving under a commission issued by the Governor of the State.

"A few jurisdictions have held to the contrary, viz., *Commonwealth ex rel. Crowe* v. *Smith*, 343 Pa. 446, 23 A.2d 440; *State ex rel. Cooper* v. *Roth*, 140 Ohio St. 377, 44 N.E.2d 456; *Perkins* v. *Manning* [59 Ariz. 60], 122 P.2d 857."

The cases of *State ex rel. McGaughey* v. *Grayston, supra,* 349 Mo. 700 [163 S.W.2d 335], and *Critchlow* v. *Monson,* *supra,* 102 Utah 378 [131 P.2d 794], both involved judges of courts of record who had gone on active duty in the armed forces and in both cases it was held that the pertinent constitutional provisions had no application under such circumstances.

■ *4. National Policy as Declared by Congress.*

The national policy has been declared by Congress in the Selective Training and Service Act of 1940 (50 U.S.C.A., App., secs. 301-318). That act provides not only for the selection and training and service of members of the unorganized militia of the several states and the Nation, but also

as a part of the general plan for organizing and disciplining such forces makes provision for their return to civilian pursuits. It provides, as to those who have satisfactorily completed the training and service exacted of them, that (Sel. Tr. & S. Act of 1940, sec. 8; 50 U.S.C.A., sec. 308): ''(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate [of satisfactory completion of his period of training and service], (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within forty days after he is relieved from such training and service— (A) if such position was in the employ of the United States Government, its Territories or possessions, or the District of Columbia, such person shall be restored to such position or to a position of like seniority, status, and pay; (B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; (C) *if such position was in the employ of any State or political subdivision thereof, it is hereby declared to be the sense of the Congress that such person should be restored to such position or to a position of like seniority, status, and pay.*'' (Italics added.)

By the Service Extension Act of 1941 (50 U.S.C.A., App., secs. 351-362; Pub. Law 213, 77th Cong.) the Congress provided (sec. 357 of 50 U.S.C.A., App.) that ''Any person who, subsequent to May 1, 1940, and prior to the termination of the authority conferred by section 2 of this joint resolution, shall have entered upon active military or naval service in the land or naval forces of the United States shall be entitled to all the reemployment benefits of section 8 of the Selective Training and Service Act of 1940 to the same extent as in the case of persons inducted under said Act . . . ''

The national policy is designed and intended to promote recruiting—the so-called voluntary enlistment and acceptance of commissions—as well as to expedite administration of the Selective Service Act. To hold section 395 of the Military and Veterans Code unconstitutional in its application to any public employees or officers would be contrary to the national

policy. The Constitution of the United States and all laws enacted pursuant to the powers conferred by it on the Congress are the supreme law of the land (U. S. Const., art. VI, sec. 2) to the same extent as though expressly written into every state law. (See *Hauenstein* v. *Lynham,* 100 U.S. 483, 490 [25 L.Ed. 628, 631]; *Florida* v. *Mellon,* 273 U.S. 12, 17 [47 S.Ct. 265, 266, 71 L.Ed. 511, 515].) "The power to wage war is the power to wage war successfully. The framers of the constitution were under no illusions as to war. They had emerged from a long struggle which had taught them the weakness of a mere confederation, and they had no hope that they could hold what they had won save as they established a Union which could fight with the strength of one people under one government entrusted with the common defence. In equipping the National Government with the needed authority in war, they tolerated no limitations inconsistent with that object, as they realized that the very existence of the Nation might be at stake and that every resource of the people must be at command. . . . 'The idea of restraining the legislative authority, in the means of providing for the national defence, is one of those refinements which owe their origin to a zeal for liberty more ardent than enlightened.' . . . It was in this view that plenary power was given to Congress to wage war and to raise armies." (War Powers under the Constitution, Charles E. Hughes, 42 A.B.A. Rep. 232, 238-239.) In the article above quoted from, the former Chief Justice quotes from an unpublished opinion prepared by President Lincoln which sets forth the grounds for sustaining the power of the Congress to pass a Conscription Act. President Lincoln, it appears, in discussing the power of the Congress to raise and support armies, said, "The power is given fully, completely, unconditionally. It is not a power to raise armies *if State authorities consent;* nor if the men to compose the armies are entirely willing; but it is a power to raise and support armies given to Congress by the Constitution without an 'if'." (Italics added.) (Lincoln's Works, vol. II, p. 388.) Descriptive of the war power of the national government, our United States Supreme Court in the recent case of *Hirabayashi* v. *United States,* 320 U.S. 81, 93 [63 S.Ct. 1375, 87 L.Ed. 1774], decided on June 21, 1943, said that such power "is not restricted to the winning of victories in the field and the repulse of enemy forces"; rather, "It ex-

tends to every matter and activity so related to war as substantially to affect its conduct and progress.''

Section 395 of the Military and Veterans Code obviously is designed to, and reasonably should, aid and expedite the recruiting service of the United States. To hold it inapplicable and void as to judges would reasonably tend to discourage them from enlisting or accepting commissions. Upon the conclusion we have reached in holding that section 9 of article VI applies to judicial officers as such but does not operate to curtail the powers vested in the Legislature to grant military leaves of absence to public employees in the armed forces during time of war, even though the latter also hold judicial office, we avoid giving section 9 such effect as might tend to obstruct the recruiting service of the United States, and we sustain the People of this State, acting through the Legislature, in their translation of the national policy into section 395 of the Military and Veterans Code. In so doing we are obeying with respect to our state Constitution the admonition sounded long ago (in *McCulloch* v. *Maryland* (1819), 4 Wheat. 316, 407, 415 [4 L.Ed. 579, 601, 603]) relative to the national Constitution and reiterated so recently by the United States Supreme Court (in *Hirabayashi* v. *United States* (1943), *supra*, 320 U.S. 81, 100 [63 S.Ct. 1375, 87 L.Ed. 1774]), ''We must never forget, that it is *a constitution* we are expounding,'' ''a constitution intended to endure for ages to come, and, consequently, to be adapted to the various *crises* of human affairs.''

■ 5. *Inapplicability of Section 18 of Article VI of the State Constitution.*

Section 18 of article VI of the California Constitution reads: ''The justices of the supreme court, and of the district courts of appeal and the judges of the superior courts and the municipal courts shall be ineligible to any other office or public employment than a judicial office or employment during the term for which they shall have been elected or appointed, and no justice or judge of a court of record shall practice law in or out of court during his continuance in office; *provided*, however, that a judge of the superior court or of a municipal court shall be eligible to election or appointment to a public office during the time for which he may be elected, and the acceptance of any other office shall be deemed to be a resignation from the office held by said judge.'' (Italics added.)

It is clear that the State of California cannot, by its Constitution or otherwise, determine eligibility or prescribe qualifications for offices other than its own state offices. This section of the Constitution is not intended to, and does not relate to federal offices. (The federal office provisions are found in section 20 of article IV, previously discussed.) It will be observed, as pointed out by respondent, that this section in the portion appearing before the proviso declares that judges shall be ineligible to any other office or public employment than a judicial office or employment during the term for which they have been elected. Manifestly, the only office or employment for which the Constitution of California can declare the conditions of eligibility or ineligibility of a person is an office or employment under the authority of the State of California. This state has no power, by Constitution or otherwise, to declare that a judge of the superior court is ineligible to occupy an office in another state or under the government of the United States. It is therefore obvious that section 18 of article VI relates exclusively to the eligibility of judges to hold or occupy other offices which exist under the authority of the State of California. After ordaining such ineligibility, the section contains a proviso declaring that, notwithstanding the preceding provisions, a judge of the superior court shall be eligible to election or appointment to public office during the term for which he was elected and that ''the acceptance of any other office shall be deemed to be a resignation from the office held by said judge.'' It is an accepted rule of statutory construction that a proviso is used to limit and qualify that which immediately precedes it and to expressly negative a construction that would prevail in the absence of the proviso. Likewise, the general rule is that that which is excepted from the operation of the statute by the proviso would, in the absence of the proviso, have been included within the general words of the statute. It is obvious that the subject matter of the proviso clause is the same as that of the preceding portion of the section; i. e., eligibility to offices within the control of the state, and the proviso was not intended to enlarge the operation of the statute. The ''any other office,'' acceptance of which ''shall be deemed to be a resignation from the office held by said judge,'' must, consistently, be an office for which the proviso makes a judge eligible notwithstanding the previously

enunciated and otherwise operative declaration of ineligibility. This section of our Constitution, then, must be construed to relate exclusively to state offices and state employment.

In construing a similar constitutional provision of the State of Montana, the Supreme Court of that state ruled as follows: "Defendant further contends that John W. Bonner's office of attorney general is vacated by reason of the provision of Article VII, section 4, of the state Constitution, that 'no officer mentioned in this section [including the attorney general] shall be eligible to, or hold any other public office, except member of the state board of education during his term of office.' The contention is that Bonner's appointment in the military service as a Major in the Judge Advocate General's Department is inconsistent with his retention of any right in connection with the office of attorney general, not because of incompatibility of the offices but because of the constitutional provision above mentioned. While the authorities are divided, it seems very doubtful that a military officer holds a public office within the meaning of the constitutional provision. However, since the provision relates to eligibility to office, it can have no application to offices under the federal authority (*Foltz* v. *Kerlin,* 105 Ind. 221, 4 N.E. 439, 5 N.E. 672, 55 Am.Rep. 197), eligibility to which depends on federal laws. *Both the ineligibility and the prohibition against holding other public office necessarily refer to the same offices and neither can refer to others than those under the laws of Montana.*" (Italics added.) (*Gullickson* v. *Mitchell, supra,* 113 Mont. 359 [126 P.2d 1106, 1114].)

 6. *Inapplicability of Section 996 of the Political Code.*

Section 996 of the Political Code provides that "An office becomes vacant on the happening of either of the following events before the expiration of the term: . . . 6. His [the incumbent officer's] absence from the state without permission of the legislature beyond the period allowed by law; 7. His ceasing to discharge the duties of his office for the period of three consecutive months, except when prevented by sickness, or when absent from the state by permission of the legislature."

The office of judge of the superior court is a constitutional office and it may be doubted whether the Legislature can

provide any method for the removal of a judge, or the forfeiture of his office, other than as prescribed in the Constitution (*State Bar* v. *Superior Court*, 207 Cal. 323, 338 [278 P. 432] ; 21 Cal.Jur. 979, sec. 144; see also the discussion of this problem in *People* v. *Craig* (Cal.), 61 P.2d 934, 935, which opinion was vacated when the question became moot, but the reasoning in which is pertinent). Hence, it is doubtful whether section 996 of the Political Code could have any efficacy in this case, but even if the court should assume for purposes of the decision that it is valid in its application to the constitutional office of judge of the superior court, it still would be inapplicable here for the same reasons that the constitutional provisions, previously discussed, are inapplicable. Furthermore it is obvious that if the Legislature had power to enact section 996 of the Political Code it also had power to enact section 395 of the Military and Veterans Code.

7. *Existence of Vacancy.*

As previously mentioned, in the McCoy case (*McCoy* v. *Board of Supervisors, supra*, 18 Cal.2d 193 [114 P.2d 569]) we were concerned only with the question as to whether Colonel Fox had forfeited his state office by entering upon active, compensated duty in the United States Marine Corps. That was a mandamus action to compel the declaration of a vacancy in a total sense and to compel the appointment of a successor adversely to the incumbent's rights. We held that we could not declare the office "vacant" in the sense of precluding the absent Marine Corps officer from retaining and exercising "the right to reoccupy such office at the termination of his period of leave" (p. 198 of 18 Cal.2d) but that during his absence on ordered military service he was *not* "holding" an office of trust or profit under the state within the meaning of the constitutional prohibition. This, in effect, amounted to a ruling that the office was temporarily vacant in relation to the actual holding or exercise thereof, and, if the board of supervisors had appointed a substitute to hold and exercise the office during the period of the marine officer's absence, we have no doubt that we should have sustained the title of the substitute insofar as it was not adverse to the absentee's rights as so declared. In the McCoy case, at page 198, we specifically referred to an earlier decision and said, "The effect of a leave of absence was considered in the case of *Whitehead* v. *Davie*, 189 Cal. 715 [209 P. 1008],

and this court there approved the theory that under certain circumstances it may be held that *one who is on leave of absence is not actually holding an office but is merely retaining the right to reoccupy such office at the termination of his period of leave."* (Italics added.) An examination of the Whitehead case discloses that the court there recognized that the position of the employee who was absent on leave could be temporarily filled. At page 720 of 189 Cal. appears the following statement: "These rules mean nothing more or less than that during the period while the battalion chief is acting as chief of the fire department, . . . his position of battalion chief shall be deemed to be temporarily filled by his successor, and he retains the right to permanently occupy that place whenever his incumbency as chief of the fire department is terminated. The chief of the fire department did not hold two positions or draw two salaries or perform the duties of the two officers because of such leave of absence. The civil service rule in question is merely for the purpose of establishing that the chief of the fire department is continuously eligible to reappointment as a permanent battalion chief and also that his successor is appointed *to fill a vacancy in that permanent employment* existing by reason of the temporary transfer of the battalion chief to the higher office. . . ." (Italics added.) It thus appears that this court has recognized that a temporary, as distinguished from a permanent or complete, vacancy in an office may exist.

Here we do not have a case of two persons acting simultaneously, each under a claim of right. Judge Garibaldi is not *acting,* and the most that he could claim, under the theory of the McCoy and Whitehead cases and under section 395 of the Military and Veterans Code, is the right to reassume his office when and if he is released from active duty with the armed forces, and if such release occurs before the expiration of his elective term. During the period of his absence, only defendant Sischo is actually exercising the duties of the office, and Judge Garibaldi's occupancy of the office is in abeyance.

There are two pertinent articles of the State Constitution which contain sections dealing with the governor's power to make appointments to fill vacancies in office: Article V, section 8, and article VI, section 8. ▆ Section 8 of article V provides that "When any office shall, *from any cause,* be-

come vacant, and *no mode* is provided by the Constitution and law for filling *such vacancy,* the Governor shall have power to fill *such vacancy* by granting a commission, which shall expire at the end of the next session of the Legislature, or at the next election by the people.'' (Italics added.) We think that the broad language of this section should properly be construed to give the governor power to fill a temporary vacancy in a term, caused by the absence of a state officer while on military leave, as well as to fill a permanent vacancy in an office as to which ''no mode is provided by the Constitution and law for filling such vacancy.'' Section 8 of article VI does specifically prescribe a mode for filling a *permanent vacancy* in the office of judge of the superior court. It provides that ''The term of office of judges of the superior courts shall be six years from and after the first Monday of January after the first day of January next succeeding their election. *A vacancy in such office* shall be filled at the next succeeding general State election after the first day of April next succeeding the accrual of such vacancy by the election of a judge *for a full term* to commence on the first Monday of January after the first day of January next succeeding his election. The Governor shall appoint a person to hold *such vacant office until the commencement of such term.''* (Italics added.) It appears from the language above quoted that the only vacancy contemplated by that section is a permanent or complete vacancy as distinguished from a mere temporary one. Previous to amendment in 1926 the constitutional provision fixing the term of office was found in section 6 of article VI, which, after fixing the normal term at six years ''from and after the first Monday of January, next succeeding their election,'' provided that ''If a vacancy occur . . . the Governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall take place at the next succeeding general election, and the judge so elected shall hold office *for the remainder of the unexpired term.''* (Italics added.)

The sections as so constituted (prior to 1926) left a hiatus between the expiration of the term of the appointed judge (at the time of the ''election and qualification of a judge to fill the vacancy'') and the beginning of the new elected term if such new elected term was a full term. In

other words, those provisions would sometimes leave a very short unexpired term to elapse between the date of the election and the date of commencement of the *new* term. The short unexpired term had to be filled by election to that specific term. It was, in part, to eliminate such undesirable feature that the amendment of 1926 was adopted. It eliminated the necessity of election to fill an unexpired term in those cases where a permanent or complete vacancy existed and provided instead for election to a new full term. But the necessity for election to fill the unexpired term (or such part thereof as the state officer may be absent on ordered military or naval duty) has not been eliminated in this isolated and unusual case by the amendment above quoted because the unexpired term is the only one, in this case, in which the temporary "vacancy" may be said to exist. A new full term here cannot commence until the expiration of Judge Garibaldi's unexpired term. Hence it appears that section 8 of article VI contemplates only the filling of a *full* term "by the election of a judge for a full term" and that the power of the Governor to fill the temporary vacancy with which we are concerned must be deemed to derive from the provisions of section 8 of article V, rather than from section 8 of article VI. The case we have here is precisely what is contemplated by the former provision; viz., it is a case in which "no mode is provided by the Constitution and law for filling *such vacancy*." (Italics added.)

As previously mentioned, it is to be borne in mind that we are not here concerned with a case in which two persons are simultaneously claiming the right to exercise the same office or to receive the emoluments attached thereto. Section 395 of the Military and Veterans Code impliedly requires that an officer or employee of the state who shall be absent on ordered military or naval duty for more than thirty days in any calendar year, shall receive no compensation from the state while so absent from his duties. As hereinabove stated, Judge Garibaldi has claimed no compensation from the state in violation of the provisions, express or implied, of said section 395. We are satisfied, therefore, that absence on military leave, under the provisions of that section (Mil. & Vet. Code, sec. 395) creates a distinct and isolated situation wherein, with both the exercise or "holding" of the office and all right to the compensation attached to that office being

unclaimed and suspended for the duration of the leave, and the office not being ministerial in character, a temporary vacancy may be said to exist, within the meaning of section 8 of article V of the state Constitution.

By virtue of the provisions of the last cited section of the Constitution the commission issued by the Governor would expire "at the next election by the people," if the absent state officer did not sooner return and reassume the exercise of the office. It follows that the Governor's commission to defendant Sischo is valid but that it will expire at the date of the next general state election if Judge Garibaldi does not sooner return and reassume his office, and that at such election (and at the preceding primary election) qualified persons may be candidates for election to the unexpired term (expiring January 8, 1945), subject to the right of Judge Garibaldi to return and reassume the duties of the office prior to the expiration of his term.

The judgment is reversed.

Curtis, J., and Edmonds, J., did not participate.