BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE JAMES B. LINDHOLM, JR., COUNTY COUNSEL, COUNTY OF SAN LUIS OBISPO, has requested an opinion on the following questions:
1. Does the common law prohibition against holding incompatible offices cause a county officer to forfeit his or her office when accepting a standby appointment for the office of county supervisor?
2. Would the common law prohibition against holding incompatible offices cause a county officer to forfeit his or her office by temporarily filling the standby office of county supervisor during a state of emergency?
 CONCLUSIONS
1. The common law prohibition against holding incompatible offices does not cause a county officer to forfeit his or her office when accepting a standby appointment for the office of county supervisor.
2. The common law prohibition against holding incompatible offices would not cause a county officer to forfeit his or her office by temporarily filling the standby office of county supervisor during a state of emergency.
 ANALYSIS
The Legislature has enacted the California Emergency Services Act (Gov. Code, §§ 8550-8668; "Act")[1] to help "mitigate the effects of natural, manmade, or war — caused emergencies which result in conditions of disaster or in extreme peril to life, property, and the resources of the state . . . ." (§ 8550; see Macias v. State of California (1995) 10 Cal.4th 844, 853-854.) The Act provides for coordinating the functions of state and local governments and private agencies "to the end that the most effective use may be made of all manpower, resources, and facilities for dealing with any emergency that may occur." (§ 8550.)
The Act includes provisions to preserve the functioning of local governments in the event of a state of emergency (§§ 8635-8644), including the appointment of "standby officers." Section 8638provides:
"To provide for the continuance of the legislative and executive departments of the political subdivision during a state of war emergency or a state of emergency or a local emergency the governing body thereof shall have the power to appoint the following standby officers:
"(a) Three for each member of the governing body.
"(b) Three for the chief executive, if he is not a member of the governing body.
"In case a standby office becomes vacant because of removal, death, resignation, or other cause, the governing body shall have the power to appoint another person to fill said office.
"Standby officers shall be designated Nos. 1, 2, and 3 as the case may be."
Section 8639 specifies who may be appointed a standby officer:
"The qualifications of each standby officer should be carefully investigated, and the governing body may request the Director of the Office of Emergency Services to aid in the investigation of any prospective appointee. No examination or investigation shall be made without the consent of the prospective appointee."
"Consideration shall be given to places of residence and work, so that for each office for which standby officers are appointed there shall be the greatest probability of survivorship. Standby officers may be residents or officers of a political subdivision other than that to which they are appointed as standby officers." (Italics added.)
A standby officer takes the oath of office that is required for the designated standby office, and such officers "serve in their posts as standby officers at the pleasure of the governing body appointing them. . . ." (§ 8640.) The duties of standby officers are set forth in section 8641:
"Each standby officer shall have the following duties:
"(a) To inform himself or herself of the duties of the office for which the officer stands by. Officers and employees of the political subdivision shall assist the standby officer and each political subdivision shall provide each standby officer with a copy of this article.
"(b) To keep informed of the business and affairs of the political subdivision to the extent necessary to enable the standby officer to fill his or her post competently. For this purpose the political subdivision may arrange information meetings and require attendance.
"(c) To immediately report himself or herself ready for duty in the event of a state of war emergency or in the event of a state of emergency or a local emergency at the place and in the method previously designated by the political subdivision.
"(d) To fill the post for which he or she has been appointed when the regular officer is unavailable during a state of war emergency, a state of emergency or a local emergency. Standby officers Nos. 2 and 3 shall substitute in succession for standby officer No. 1 in the same way that standby officer No. 1 is substituted in place of the regular officer. The standby officer shall serve until the regular officer becomes available or until the election or appointment of a new regular officer."[2]
During a state of emergency, standby officers fill the vacancies that are caused by the unavailability of the regular officers. (§ 8641, subd. (d).) Section 8643 additionally states with respect to the governing bodies of cities and counties:
"During a state of war emergency a state of emergency or a local emergency the governing body shall:
"(a) Ascertain the damage to the political subdivision and its personnel and property. For this purpose it shall have the power to issue subpoenas to compel the attendance of witnesses and the production of records.
"(b) Proceed to reconstitute itself by filling vacancies until there are sufficient officers to form the largest quorum required by the law applicable to that political subdivision. Should only one member of the governing body or only one standby officer be available, that one shall have power to reconstitute the governing body.
"(c) Proceed to reconstitute the political subdivision by appointment of qualified persons to fill vacancies.
"(d) Proceed to perform its functions in the preservation of law and order and in the furnishing of local services."
We are informed that a county is considering the appointment of the county assessor, district attorney, treasurer, controller, and recorder as standby officers for the offices of the five county supervisors. We are asked whether the common law prohibition against holding incompatible offices would preclude such appointments or prevent these county officers from temporarily filling the vacancies on the board of supervisors during a state of emergency. We conclude that the common law prohibition would be inapplicable in both situations.
Under the common law doctrine of incompatible offices, which is part of California law, the same person may not hold two public offices where there is any significant clash of duties or loyalties between the offices, if the dual office holding would be improper for reasons of public policy, or if either officer exercises a supervisory, auditory, or removal power over the other. (People ex rel. Chapman v. Rapsey (1940)16 Cal.2d 636; 81 Ops.Cal.Atty.Gen. 344, 345 (1998).) The consequence of holding incompatible offices is that the person is deemed to have forfeited the first office upon accepting the second. (38 Ops.Cal.Atty.Gen. 121, 125 (1961).)
1. Standby Officers
The first question to be resolved is whether the incompatible offices rule is applicable to the appointment of the county officers in question as "standby officers." For the common law prohibition to apply, both positions must be "public offices" for purposes of the prohibition. (81 Ops.Cal.Atty.Gen., supra, at p. 345; see 78 Ops.Cal.Atty.Gen. 60, 62-63 (1985).) A position may be a public office for some purposes but not for purposes of the incompatible offices rule. (Neigel v. Superior Court (1977) 72 Cal.App.3d 373, 378-379; 83 Ops.Cal.Atty.Gen. 246, 247 (2000); 78 Ops.Cal.Atty.Gen. 362, 363-368 (1995).) Here, we find that forfeiture of the first office is not required since a standby officer does not hold a public office for purposes of the common law prohibition.
"A public office requires the presence of two essential elements: (1) an office which is not transient, occasional or incidental but is in itself an entity in which incumbents succeed one another; and (2) the delegation to the office of some portion of the sovereign functions of government, either legislative, executive or judicial." (Moore v. Panish (1982) 32 Cal.3d 535, 545; see Dibb v. County of San Diego (1994)8 Cal.4th 1200, 1212; People ex rel. Chapman v. Rapsey, supra, 16 Cal.2d at p. 640; 76 Ops.Cal.Atty.Gen. 244, 247 (1993).) Although an office must have some permanence and continuity, "these terms do not refer to the tenure of the appointed officer, but apply to the permanency and continuity of the office itself." (Cerini v. City of Cloverdale (1987)191 Cal.App.3d 1471, 1478; see Laidlaw Environmental Services, Inc., Local Assessment Com. v. County of Kern (1996) 44 Cal.App.4th 346, 352.)
Applying these principles describing a public office, we find that the county assessor, district attorney, treasurer, controller, and recorder hold "offices" for purposes of the common law prohibition. (See § 24000; 79 Ops.Cal.Atty.Gen. 155, 156-157 (1996); 36 Ops.Cal.Atty.Gen. 252, 253 (1960).)
That is not the case, however, for a standby county officer. The duties of a standby officer are to become aware of the responsibilities of the standby office, to stay informed of the local government's business and affairs in general, and to report for duty when a state of emergency is declared. (§ 8641.) It is apparent that these duties do not involve the exercise of sovereign legislative or executive powers. Though a number of factors may be taken into consideration in deciding whether a given position is a public office for purposes of the incompatible offices doctrine, " `it is essential that the incumbent be clothed with a part of the sovereignty of the state to be exercised in the interest of the public.' " (People ex rel. Chapman v. Rapsey, supra, 16 Cal.2d at p. 640.) Hence, a standby officer does not hold a public office for purposes of the incompatible offices doctrine.
The legislative history of the Act fully supports our finding that the incompatible offices doctrine is inapplicable here. We have traced the language of section 8639 back to its predecessor statute, former Military and Veterans Code section 1550.04 When the statute was first enacted (Stats. 1957, ch. 1368, § 1), it contained the following paragraph:
"Stand-by officers shall not be officers or employees of the local agency. Should said stand-by officers become employees or officers of the local agency their post of stand-by office shall become vacant. Consideration shall be given to places of residence and work, so that for each office for which stand-by officers are appointed there shall be the greatest probability of survivorship."
In 1958, the statute was amended to delete the first two sentences of this paragraph. (Stats. 1959, 1st Ex. Sess. 1958, ch. 42, § 1, p. 243.) In 1959, the Legislature added the following sentence to this paragraph:
". . . Stand-by officers may be residents or officers of a local agency other than that to which they are appointed as stand-by officers." (Stats. 1959, ch. 1330, § 3.5.)
It is a well recognized principle of statutory construction that "`"[t]he mere fact that the legislature enacts an amendment indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one . . ."' [Citations.]"
(Dubins v. Regents of University of California (1994) 25 Cal.App.4th 77,85.) "[A] substantial change in the language of a statute . . . by an amendment indicates an intention to change its meaning." (Mosk v. Superior Court (1979) 25 Cal.3d 474, 493.)
Accordingly, the Legislature first prohibited standby officers from also being regular officers of the political subdivision in question. However, this prohibition lasted only one year and was then deleted from the statutory scheme. The 1958 amendment demonstrates the Legislature's intention to allow a person to be a standby officer and a regular officer for the same political subdivision.
We thus conclude in answer to the first question that the common law prohibition against holding incompatible offices does not cause a county officer to forfeit his or her office by accepting a standby appointment for the office of county supervisor.
2. County Supervisors
The ultimate duty of a standby officer is to fill the designated office during a state of emergency "until the regular officer becomes available or until the election or appointment of a new regular officer." (§8641, subd. (d).) Here, it is proposed that specified county officers would become the members of the board of supervisors during a state of emergency and "[p]roceed to perform [the board's] functions in the preservation of law and order and in the furnishing of local services." (§ 8643, subd. (d).)
First, we note that a county supervisor holds a "public office" for purposes of the incompatible offices rule. (§ 24000; 78 Ops.Cal.Atty.Gen. 316, 318 (1995); 67 Ops.Cal.Atty.Gen. 409, 410 (1984); 66 Ops.Cal.Atty.Gen. 176, 178 (1983).) With respect to the duties of a county supervisor in supervising other county officers, section 25303 provides:
"The board of supervisors shall supervise the official conduct of all county officers. . . . It shall see that they faithfully perform their duties, direct prosecutions for delinquencies, and when necessary, require them to renew their official bond, make reports and present their books and accounts for inspection.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
Due to the supervisory nature of a county supervisor's responsibilities with respect to the county assessor, district attorney, treasurer, controller, and recorder (see Dibb v. County of San Diego, supra, 8 Cal.4th at pp. 1209-1210; People v. Langdon (1976) 54 Cal.App.3d 384,390), the offices in question are undoubtedly "incompatible" for purposes of the common law prohibition (see People ex rel. Chapman v. Rapsey,supra, 16 Cal.2d at p. 642; People ex rel. Deputy Sheriffs' Assn. v.County of Santa Clara (1996) 49 Cal.App.4th 1471, 1481; 82 Ops.Cal.Atty.Gen. 201, 204 (1999); 81 Ops.Cal.Atty.Gen., supra, at p. 345; 81 Ops.Cal.Atty.Gen. 304, 307-309 (1998); 73 Ops.Cal.Atty.Gen. 357, 363 — 364 (1990)).
However, it is well settled that the Legislature may abrogate the common law rule whenever it considers it appropriate for public officers to hold incompatible offices. (McClain v. County of Alameda (1962)209 Cal.App.2d 73, 79; 81 Ops.Cal.Atty.Gen., supra, at p. 345.) " `There is nothing to prevent the Legislature . . . from allowing, and even demanding, that an officer act in a dual capacity.' " (American CanyonFire Protection Dist. v. County of Napa (1983) 141 Cal.App.3d 100, 104.)
Has the Legislature abrogated the common law rule for purposes of the Act? As we have indicated in analyzing the office of a standby officer, the Legislature originally prohibited a person from serving as a regular officer and a standby officer for the same city or county. This prohibition, however, remained in effect only one year, and was then deleted by a statutory amendment. We believe the 1958 amendment evidences the Legislature's intention to allow a person to be a regular officer and a standby officer for the same political subdivision. It follows that if a standby officer must temporarily fill the vacancy in the standby office, he or she is not required by the common law rule to forfeit the first office. The possibility of a standby officer actually serving in the standby office must have been contemplated by the Legislature in 1958; the express deletion of the prohibition reflects a legislative intent to abrogate the common law doctrine.
We recognize that the Legislature's statutory amendment in 1958 might reflect a different purpose and intent. The original prohibition enacted in the 1957 legislation went beyond the effect of the common law rule. It covered not only standby officers, but also employees of the political subdivision, neither of whom would have "offices" for purposes of the common law prohibition. The 1958 amendment could have been intended to eliminate this additional coverage, leaving the common law rule in place.
However, our conclusion is supported by the Legislature's 1959 amendment of the statute, expanding the available pool of possible standby officers to residents and officers outside the political subdivision, and by the broad purposes of the Act in authorizing standby officers. (See, e.g., Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735
[parts of a statute must be interpreted in context and in light of the statutory scheme as a whole].) The Act encourages the state and local governments to make preparations adequate to protect the health and safety and preserve the lives and property of Californians in the event of an emergency or disaster. In so doing, the Act provides for flexibility in the operations of civil government and for temporary suspension of the normal rules constraining government action when necessary to stabilize the emergency situation. (See, e.g., §§ 8571 [Governor may suspend any regulation or regulatory statute]; 8572 [Governor may commandeer private property or personnel]; 8644 [if all regular and standby officers are unavailable, local government to be reconstituted by neighboring municipality].)
Abrogation of the incompatible offices prohibition is consistent with these purposes of the Act. Indeed, if the common law rule were not abrogated by the Legislature, local governments could be deprived of the standby services of the best qualified members of the community. Current county officers, for example, would clearly have valuable knowledge and expertise concerning the county's ongoing operations and affairs. Applying the common law prohibition to disqualify them from serving as county supervisors would frustrate the Legislature's express goal of making "the most effective use . . . of all manpower, resources, and facilities for dealing with any emergency that may occur." (§ 8550; see McCoy v. Board of Supervisors (1941) 18 Cal.2d 193 [constitutional prohibition on dual office holding is not to be construed to deter a county officer from serving in the military during a national emergency].)
We thus conclude in answer to the second question that the common law prohibition against holding incompatible offices does not cause a county officer to forfeit his or her office by temporarily filling the standby office of county supervisor during a state of emergency.
[1] All further references to the Government Code are by section number only.
[2] "As used in this article, `unavailable' means that an officer is either killed, missing, or so seriously injured as to be unable to attend meetings and otherwise perform his duties. . . ." (§ 8636.)