[S. F. No. 17011.   In Bank.   Mar. 23, 1944.]

WILLIAM B. McKESSON, Petitioner, *v.* MICHAEL J. DONAGHUE, as Registrar of Voters, etc., Respondent.

Norman A. Bailie, Frank B. Belcher, Fred M. Cross, George W. Dryer, Raymond Haight and Wm. C. Mathes for Petitioner.

J. H. O'Connor, County Counsel (Los Angeles), and Ernest R. Purdum and Edward H. Gaylord, Deputies County Counsel for Respondent.

W. H. Anderson and Rollin L. McNitt for Dailey S. Stafford, as real party in interest.

CURTIS, J.—This is an original proceeding in mandamus to compel the respondent, as Registrar of Voters of the County of Los Angeles, to include on the ballot for the forthcoming consolidated primary election to be held on May 16, 1944, the petitioner's name as a candidate for "Office No. 14 (unexpired term)" of the Superior Court of the County of Los Angeles. The matter is submitted on petition and demurrer, and on a stipulation waiving oral argument and permitting immediate disposition of the controversy.

The determination of this proceeding requires the construction and reconciliation of certain sections of the Elections Code so as to effectuate the legislative intent with respect to the nominating procedure to be followed in presenting to the electorate candidates for judicial office.

The petition sets forth the following facts: In August, 1943, the Honorable Benjamin J. Scheinman, a duly elected and qualified Judge of the Superior Court of the County of Los Angeles, entered the armed forces of the United States, and for several months last past he has been, and now is, absent from the state on ordered military service. This situation, under the doctrine of the case of *People* v. *Sischo* (1943), *ante*, p. 478 [144 P.2d 785], created a temporary vacancy in Judge Scheinman's office, the term of which will

expire on January 8, 1945. Pursuant to sections 2573 and 2574 of the Elections Code, the Secretary of State certified to the respondent on February 16, 1944, that the judicial offices in the county of Los Angeles to be filled at the election on May 16, 1944, were twenty superior court judgeships, each for a term of six years commencing January 9, 1945, and the single judgeship on said court for the unexpired term of Judge Scheinman. Accordingly, and as required by section 2575 of the Elections Code, the respondent published a notice of offices for which candidates were to be nominated or elected at the May 16th election, and included in such listing was the temporary judicial vacancy on said superior court caused by Judge Scheinman's military absence from the state and specified "Office No. 14 (unexpired term)."

On February 28, 1944, the Governor of this state appointed William B. McKesson, the petitioner herein, to fill the interim appointive portion of the term of Judge Scheinman, and on March 2, 1944, the petitioner duly qualified as Judge of the Superior Court of the County of Los Angeles. On March 7, 1944, a sponsors' declaration of the candidacy of the petitioner for the remainder of the unexpired term was executed by the proper number of qualified sponsors (Elec. Code, secs. 2612-2617), a declaration of acceptance of the nomination was executed by the petitioner (Elec. Code, sec. 2618), and on that date (seventy days before the May 16th election, as prescribed by section 2621.5 of the Elections Code, enacted at the special session of the Legislature in January, 1944, and effective February 2, 1944), both documents, with the requisite filing fees, were delivered to the respondent. The respondent accepted these papers, but he has announced that he will take no further steps in the matter because the petitioner failed to file his *declaration of intention to become a candidate* for the judicial office mentioned. (Elec. Code, secs. 10600-10602.) Accordingly, unless this court directs the respondent to cause the petitioner's name to be printed on the ballot for the May 16th election, he will not do so.

It is the petitioner's position that sections 10600 to 10602 do not affect his situation because he is a candidate for judicial office by virtue of the filing of a *sponsors' declaration* rather than a *personal declaration of candidacy*. The respondent, on the other hand, claims that said sections of the Elections Code apply to *all* candidates for judicial office,

regardless of the form of nomination. In this argument the respondent is joined by Dailey S. Stafford, who on February 11, 1944, and within the time specified (secs. 10601-10601.5) filed his declaration of intention to become a candidate for the unexpired term of Judge Scheinman; and on March 2, 1944, he filed his personal nomination papers and paid the requisite filing fee. As such candidate said Dailey S. Stafford is a party whose interest will be directly affected by the outcome of this proceeding, and accordingly he has so identified himself herein. (Code Civ. Proc., sec. 1107.)

To be considered at the outset are the sections of the Elections Code the application of which constitutes the principal point of dispute between the parties:

Section 10600: "In any election at which *two or more judges* or justices of any court are to be voted for or elected *for the same term,* it shall be deemed that there are as many separate judicial offices to be filled as there are judges or justices of the court to be elected. Each separate office shall be *designated by a distinguishing number* not greater than the total number of offices. . . ." (Emphasis added.) (Based on former Stats. 1927, ch. 316, p. 528.)

Section 10601: "*Each candidate for a numerically designated judicial office,* not more than ten nor less than five days prior to the first day on which his nomination papers may be circulated and signed, or *not more than ten nor less than five days prior to the first day on which his nomination papers may be presented for filing, shall file* in the office in which his nomination papers are required to be filed, *a written and signed declaration of his intention to become a candidate* for that office and shall state in his declaration for which of the numerically designated offices he intends to become a candidate." (Emphasis added.) (Based on former Stats. 1927, ch. 316, p. 528.)

Section 10601.5: "*Every candidate for a judicial office, not more than 10 or less than five days prior to the first day on which his nomination papers* may be circulated and signed or *may be presented for filing, shall file,* in the office in which his nomination papers are required to be filed, *a written and signed declaration of his intention to become a candidate* for that office." (Emphasis added.) (Added by Stats. 1941, ch. 1160, p. 2892, sec. 1.)

Section 10602: "The numerically designated offices shall

be grouped and arranged on all ballots in numerical order. No person may be a candidate nor have his name printed upon any ballot as a candidate *for any numerically designated office* other than the one indicated by him *in his declaration of intention to become a candidate.*" (Emphasis added.) (Based on former Stats. 1927, ch. 316, p. 528.)

In passing, it may be said that this legislation, affecting judicial offices only, is not open to objection as violative of the "uniformity" provisions of the state Constitution. (Art. I, sec. 11; art. IV, sec. 25.) The distinction is a natural and reasonable one pursuant to the treatment of the judiciary as a separate class in article VI of the state Constitution, and these sections of the Elections Code unquestionably apply uniformly to all who fall within their purview. (See *Steiger* v. *Collins,* 215 Cal. 634 [12 P.2d 426]; *Baertschiger* v. *Leffler,* 36 Cal.App.2d 208, 213 [97 P.2d 501].)

Relating the present factual situation to the legislative plan embraced within the above-quoted sections, the petitioner first argues that the *interim elective term* which he seeks is not a "numerically designated office" and consequently the procedural requirements referable to a candidate therefor have no bearing here. He cites as prerequisites under section 10600 the following conditions: (1) "two or more judges" to be elected, and (2) "for the same term." To illustrate his point of distinction he refers to the aforementioned listing of judicial offices in the county of Los Angeles to be filled at the May 16th election: *twenty* superior court judgeships, each for a six-year term commencing January 9, 1945, as contrasted to the *single interim judgeship* on the same court, with the term beginning May 16, 1944, and ending January 8, 1945—less than eight months. But, for the purposes of this opinion, it does not matter whether the petitioner is a candidate for a numerically or non-numerically designated office, for he undoubtedly is a "candidate for a judicial office" and would be required to file a preliminary "declaration of his intention" under section 10601.5, unless it appears that the *sponsor method of candidacy* would not reasonably comprehend such procedural step. In determining this critical point, of course, all pertinent sections of the Elections Code must be read together and construed in a manner consistent with their respective purposes.

It appears from said code that the Legislature intended to

set up *two systems* for the nomination of candidates for office: (1) by *personal declaration,* and (2) by *sponsors' declaration.* Thus, under section 2600 it was provided:

"No candidate's name shall be printed on the ballot to be used at the direct primary unless a declaration of his candidacy is filed not less than 'sixty and not more than ninety days prior thereto.

"The *declaration may be made by the candidate,* or, on his behalf by *sponsors of the candidate.*

"*When* the declaration is *made by sponsors the candidate's affidavit of acceptance shall be filed with the declaration.*" (Emphasis added.)

(The 60-day period was changed to 65 days for a limited period by section 2600.5, added at the special session of the Legislature in January, 1944, above mentioned.)

The petitioner contends that the efficient operation of the two forms of nomination established by the Legislature would not sustain the application of the provisions of either section 10601 or section 10601.5, *supra,* to the *sponsor method,* and that compliance with said sections was intended to be incumbent only upon candidates for judicial office by virtue of *personal declaration* therefor. Upon analysis of the import of the pertinent sections herein and with due consideration for the purposes to be achieved by the two independent nominating procedures as provided, the petitioner's position seems to accord with the legislative intent.

Under section 2600.5, *supra,* the earliest date on which the sponsors could have filed a declaration of candidacy for the petitioner was February 16, 1944—"90 days prior to the" May 16th election. As previously stated, such declaration and the petitioner's affidavit in acceptance of the nomination were delivered to the respondent for filing on March 7, 1944—"70 days prior to the" May 16th election. (Sec. 2621.5, *supra.*) Turning to the pertinent time limitation of section 10601.5, *supra,* the requirement that the candidate shall file his declaration of intention "not more than 10 or less than five days *prior to the first day on which his nomination papers . . . may be presented for filing*" undoubtedly refers to "90 days prior to the" election. (Sec. 2600.5, *supra.*) Thus, to apply such provision here, it would have been necessary for the petitioner to have filed a declaration of his intention to become a candidate for the above-

mentioned interim office sometime during the period between February 7 and February 11, inclusive, 1944. Section 2620 expressly authorizes the sponsor method of nomination for a "nonpartisan" office, and strict compliance with such independent method did not require that the petitioner's nomination papers be executed and delivered to the respondent for filing until March 7, 1944, as in fact was done here—"70 days prior to the" May 16th election, although 25 days beyond the time allowed for the filing of a "declaration of his intention to become a candidate for" judicial office. It is not reasonable to assume that the Legislature intended to so emasculate the function of the independent sponsor system of nomination for judicial candidates.

The petitioner's claim as to the Legislature's intent to require the filing of a "declaration of intention" only with respect to *personal declarations* of candidacy finds still further support when the time element in sections 10601 and 10601.5 is correlated with the sponsor concept of nomination for judicial office. As above noted, the time for the filing of nomination papers by sponsors is fixed at the earliest date of 90 days before the primary election. (Sec. 2600.5, *supra.*) Under the express terms of sections 10601 and 10601.5 the electors are provided with the opportunity of learning "not more than 10 or less than five days prior to" the earliest date authorized for the filing of nomination papers, the persons who, by the filing of their "declaration of intention," aspire to judicial office. This five-day gap before nomination papers either by the candidate or sponsors may be filed must have been intended for some purpose, and its value becomes apparent in conjunction with the authorized *sponsor* procedure. (Secs. 2612, et seq.) Thus, in this time the electors, if not satisfied with those who have declared their intention to become candidates, may proceed to inquire into the qualifications of other persons and propose under the sponsor system someone whom they consider better fitted for the office in question. Such possible procedure demonstrates the beneficial purpose of the sponsor system, which should be allowed full scope of function with respect to judicial as well as other offices, in the absence of an express legislative declaration necessitating its rejection. Such interpretation of the preliminary requirement as to aspirants for judicial office under sections 10601 and 10601.5 gives effect to the purport

of the statutory language and at the same time correlates the purpose of such advance procedural step with the *independent* sponsor method of nomination long-recognized by the Legislature as an *equivalent means* of proposing a candidate for public office. In this manner both divisions of the Elections Code, as here noted, may operate expeditiously and in harmony one with the other.

In this connection, it should here be noted that by the enactment of sections 10600-10602 the Legislature has clearly evidenced its intention that an aspirant for a numercially designated judicial office must "indicate" the particular office for which he is to be a candidate. Section 10602 requires that such indication must appear in the "declaration of intention" of one who personally declares his candidacy. In the case of a candidate nominated under the sponsor method, such indication should appear either in the sponsors' declaration of candidacy or in the candidate's acceptance of the nomination. Thus, full effect is given to the Legislature's intent requiring particularity as to numerically designated judicial offices.

Still other considerations present themselves with respect to the propriety of limiting the provisions of sections 10601 and 10601.5 to candidates for judicial office by *personal nomination*. Under the express language of these sections, only *candidates*, not sponsors, may file the "declaration of intention." If the candidate by *sponsors' nomination* is required to file such preliminary "declaration of intention" and thus to indicate his purpose to become a candidate, then what would be the object in having his *sponsors also file* a declaration of his candidacy? Such duplication of procedural steps is not compatible with the independent function of the two systems of nomination authorized by the Legislature. (Sections 2600, 2600.5 *supra.*) Moreover, if sections 10601 and 10601.5 governed candidates by *sponsors' nomination,* then when the sponsors would have authority to file their nominating papers—at the earliest "90 days prior to the" election—they could *only* present a candidate who had already declared his intention. Thus, the sponsors' declaration of candidacy would be a superfluous action insofar as putting any new name before the public for office, and would serve simply to add some political prestige to a candidate already in the running. Such limited concept is

not in accord with the essential purpose of the sponsor method of nomination, as above discussed, and it is not reasonable to conclude that the Legislature intended its function to be so restricted with respect to judicial offices. Rather the import of the *sponsor system of nomination* attains greater significance in relation to judicial offices when correlated with sections 10601 and 10601.5, as above indicated.

In opposition to the petitioner's claim that he, as a candidate for a non-numerically designated office under the sponsors' system of declaration, was not required to comply with section 10601.5, *supra,* the respondent relies principally upon the opening words of said section—"every candidate" —as including *"one put forward for election,* whether with or against his own will; *one put forward by others for an office;* . . ." (29 C.J.S. 19, Elec.) He also argues that if said section is construed as not comprehending a person nominated as petitioner was here for the judicial office in question, then one late in declaring his *intended candidacy,* as prescribed, could still become a candidate under the sponsor system by securing sponsors to act on his behalf so as to relieve himself of the consequences of his default under section 10601.5. These points of argument are worthy of mention and have been considered, but they cannot prevail herein in view of other matters above recited as evincing the legislative intent to establish two nominating systems of independent force and effective operation to permit the electors to exercise the widest choice possible in presenting a list of qualified candidates for judicial office. In these circumstances section 10601.5, as here pertinent, must be interpreted in harmony with this fundamental observation. In thus holding that the petitioner, as a candidate by sponsor declaration, was not required to comply with said section 10601.5, it is clear that the validity of the filing of his nomination papers is not open to question and his name as a candidate for the judicial office here involved must be placed on the sample and official ballot at the forthcoming primary election.

Let a peremptory writ of mandate issue forthwith.

Gibson, C. J., Shenk, J., Carter, J., and Edmonds, J., concurred.

SCHAUER, J.—I dissent. I am unable to find in the statutes in question any invalidity or any ambiguity or any con-

flict upon which to predicate an "interpretation" or "reconciliation" which inexorably has the effect of striking down a law which for a number of years has been salutary in its government of all candidacies for judicial office. This law was enacted as a legislative contribution toward building up the standards of the judiciary in this state. In providing for separate judicial offices, in requiring that all judicial candidacies be declared for specifically designated offices and that each judicial office candidate file a written notice of intention designating the office for which he would be a candidate at a time not less than five nor more than ten days before the date on which nomination papers for any office could be circulated or filed, the Legislature attempted to secure for the people—and heretofore has been consistently understood to have secured for them—a special period of not less than five days in which the people could give special consideration to the candidates for the highly important judicial offices. By requiring that candidacies for judicial office be officially announced thus in advance of candidacies for all other offices the Legislature gave added protection to the people in their opportunity to become better advised as to the relative merits of the announced judicial office candidates and thereby contributed also to the security of tenure of worthy incumbents. The natural effect of this legislation has been salutary and far reaching.

The holding of the majority that the sections of the Elections Code requiring that each candidate for judicial office file a notice of "intention to become a candidate" have no application to a candidate whose declaration of candidacy is filed by sponsors rather than by himself can well operate to destroy all the efficacy of the law in question insofar as the preliminary notice of intention and the special period for consideration of judicial candidates is concerned. It will simply be a matter of choice with each candidate for judicial office as to whether he shall refrain from filing a notice of intention to become a candidate and thereafter have sponsors submit his declaration or whether he shall file a notice of intention and thereafter *either* file his own declaration of candidacy *or* procure sponsors to file it for him. Certainly the filing of a notice of intention to become a candidate would not preclude a person from having his declaration of candidacy filed by sponsors. It is to be noted that a declaration of

candidacy by sponsors cannot in any event be filed unless the candidate has previously or concurrently consented to become such candidate. Section 2600 of the Elections Code requires that "When the declaration is made by sponsors the candidate's affidavit of acceptance shall be filed with the declaration," and section 2613 requires that "In the document in which the verification deputies are appointed the five persons joining as provided in section 2612 shall make affidavit that the candidate therein named . . . has given his consent to be proposed for nomination to such office."

The direct primary law had been enacted long prior to the enactment of sections 10600-10602 of the Elections Code. The provisions of sections 2600 et sequitur providing the two alternative methods for filing declarations of candidacy were extant and in effect when the provisions of sections 10600-10602, applying specifically to candidates for judicial office, were adopted. The latter sections by their very terms not only do not except candidates whose declarations of candidacy are filed by sponsors, but they expresssly include candidates under both procedures, as will appear from the language of such sections hereinafter quoted. The requirement for the filing of a notice of intention is no more inconsistent with procedure by the one system than it is with procedure by the other. No person can be declared a candidate without his consent, whether the declaration be by sponsors or by himself. If sponsors are to induce a person to become a candidate for a judicial office they can induce him to declare his intention five days earlier just as well as five days later.

The pivotal point of the controversy is the question as to whether petitioner's admitted failure to file, within the time specified by section 10601.5 of the Elections Code, the "written and signed declaration of his intention to become a candidate" for the office, as provided for by that section, justifies the respondent in his announced intention of omitting petitioner's name from the list of qualified candidates and from the ballots. By reason of the fact that the Legislature has . expressly made the statute mandatory and inclusive I am compelled to the conclusion that the writ should be denied.

The essential facts are as follows: In August, 1943, the Honorable Benjamin J. Scheinman, a duly elected and quali-

fied Judge of the Superior Court of the County of Los Angeles, entered the armed forces of the United States, and for several months last past he has been, and now is, absent from the state on ordered military service. This situation, under the doctrine of the recent case of *People* v. *Sischo* (1943), *ante*, p. 478 [144 P.2d 785], created a temporary vacancy in Judge Scheinman's office, the term of which will expire on January 8, 1945. Pursuant to sections 2573 and 2574 of the Elections Code, the Secretary of State certified to the respondent on February 16, 1944, that the judicial offices in the county of Los Angeles to be filled at the forthcoming election on May 16, 1944, were twenty superior court judgeships, each for a term of six years commencing January 9, 1945, and the single judgeship on said court for the unexpired term of Judge Scheinman. Accordingly, and as required by section 2575 of the Elections Code, the respondent published a notice of offices for which candidates were to be nominated or elected at the May 16th election, and included in such listing was the temporary judicial vacancy on said superior court caused by Judge Scheinman's military absence from the state and specified "Office No. 14 (unexpired term)."

On February 11, 1944, within the time and otherwise as provided by section 10601.5 of the Elections Code, former Judge Dailey S. Stafford, a member of The State Bar, legally qualified and entitled to become a candidate for the office, filed with the respondent Registrar of Voters a written and signed declaration of his intention to become a candidate for the office for the unexpired term of Judge Scheinman and subsequently has in all respects complied with the pertinent provisions of the Elections Code entitling him to be included in the list of qualified candidates and on the ballot for the office in question. As a real party in interest he has joined in this proceeding. On February 28, 1944, after the time for filing notice of intention of candidacy for the unexpired term had expired, the Honorable Earl Warren, Governor of this state, appointed William B. McKesson, the petitioner herein, to fill the interim term of Judge Scheinman, but under such appointment Judge McKesson can hold the office only until "the next election by the people," leaving the remainder of Judge Scheinman's unexpired term (expiring January 8, 1945) to be filled at such election. (Cal. Const., art. V, sec. 8; *People* v. *Sischo* (1943), *supra, ante,* p. 478 [144 P.2d 785].) On March 2, 1944, the petitioner duly qualified as

Judge of the Superior Court of the County of Los Angeles. On March 7, 1944, a sponsors' declaration of the candidacy of the petitioner for the portion of the unexpired term to ensue after the "next election by the people" was executed by duly qualified persons (Elec. Code, secs. 2612-2617), a declaration of acceptance of the nomination was executed by the petitioner (Elec. Code, sec. 2618), and on that date (seventy days before the May 16th election, as prescribed by section 2621.5 of the Elections Code, enacted at the special session of the Legislature in January, 1944, and effective February 2, 1944) both documents, with the requisite filing fees, were delivered to the respondent. The respondent has filed these papers in his office, but he has announced that he will take no further steps in the matter because, as previously noted, the petitioner failed to file any *declaration of intention to become a candidate* for the judicial office mentioned, as assertedly required by section 10601.5 of the Elections Code. Accordingly, unless this court directs the respondent to cause the petitioner's name to be printed on the ballot for the May 16th election, he will not do so.

Section 10601.5 of the Elections Code, hereinabove referred to, provides that *"Every candidate for a judicial office, not more than 10 or less than five days prior to the first day on which his nomination papers* may be circulated and signed or *may be presented for filing, shall file* in the office in which his nomination papers are required to be filed, *a written and signed declaration of his intention to become a candidate* for that office." (Italics supplied.) (Added by Stats. 1941, ch. 1160, p. 2892.) To have complied with this section it would have been necessary for petitioner to have filed his declaration of intention with the respondent during the period of February 7 to 11, inclusive, 1944. Admittedly he did not make such filing.

Other sections of the Elections Code which are discussed by the parties include:

Section 10600: "In any election at which *two or more judges* or justices of any court are to be voted for or elected *for the same term,* it shall be deemed that there are as many separate judicial offices to be filled as there are judges or justices of the court to be elected. Each separate office shall be *designated by a distinguishing number* not greater than

the total number of offices. . . ." (Italics supplied.) (Enacted 1939; based on former Stats. 1927, ch. 316, p. 528.)

Section 10601: "*Each candidate for a numerically designated judicial office,* not more than ten nor less than five days prior to the first day on which his nomination papers may be circulated and signed, or *not more than ten nor less than five days prior to the first day on which his nomination papers may be presented for filing, shall file* in the office in which his nomination papers are required to be filed, *a written and signed declaration of his intention to become a candidate* for that office and shall state in his declaration for which of the numerically designated offices he intends to become a candidate." (Italics supplied.) (Enacted 1939; based on former Stats. 1927, ch. 316, p. 528.)

Section 10602: "The numerically designated offices shall be grouped and arranged on all ballots in numerical order. No person may be a candidate nor have his name printed upon any ballot as a candidate *for any numerically designated office* other than the one indicated by him *in his declaration of intention to become a candidate.*" (Italics supplied.) (Enacted 1939; based on former Stats. 1927, ch. 316, p. 528.)

In the majority opinion it is stated that "But for the purposes of this opinion, it does not matter whether the petitioner is a candidate for a numerically or non-numerically designated office, for he undoubtedly is a 'candidate for a judicial office' and would be required to file a preliminary 'declaration of his intention' under section 10601.5, unless it appears that the *sponsor method of candidacy* would not reasonably comprehend such procedural step." Thus the effect of the majority opinion is to hold that the language of the above quoted section "No person may be a candidate nor have his name printed upon any ballot as a candidate for any numerically designated office other than the one indicated by him in his declaration of intention to become a candidate" is meaningless insofar as a candidate proposed by sponsors is concerned.

Petitioner contends: (1) That "Sections 10600, 10601 and 10602 of the Elections Code do not apply" to the situation portrayed in that they have reference only to "numerically numbered" judicial offices, i. e., to an election "at which two or more judges or justices of any court are to be voted for

or elected for the same term," that the unexpired term of Judge Scheinman is *the only unexpired term* in which there is a vacancy to be filled by the 1944 election in Los Angeles county and hence that it must be distinguished from the several "numerically numbered" full terms;

(2) That "Section 10601.5 of the Elections Code does not require a candidate who is nominated pursuant to the provisions of Sections 2612, et seq. of the Elections Code [declarations by sponsors] to file a declaration of intention";

(3) That, even if section 10601.5 does apply "to declarations of candidacy by sponsors [secs. 2612, et seq.], it does not impose any penalties" for noncompliance, does not alter the duties of the respondent otherwise provided by law, and, in effect, is merely directory; and

(4) That "Sections 10601 and 10601.5 of the Elections Code are special legislation and therefore unconstitutional."

Petitioner's proposition numbered 1 may be conceded for the purposes of this opinion, but his propositions numbered 2, 3 and 4 cannot be sustained.

In contending that "Section 10601.5 of the Elections Code does not require a candidate who is nominated pursuant to the provisions of sections 2612, et seq. of the Elections Code to file a declaration of intention," petitioner makes the abstractly plausible argument that it would be in the public interest to permit declarations of candidacy by sponsors after the time for personal declarations of intention by prospective candidates had expired, because it would be only after that time had been reached that the interested public could survey the announced field and determine that it was in the public interest to induce some other candidate or candidates to enter the race. Ignoring the self-evident fact that the public could before, just as well as after, the event mentioned interest itself in inducing desirable candidates to offer themselves, and recognizing as a purely abstract hypothesis that, in the reality of human nature, it is quite likely that the event of a discredited candidate's declaration standing without competition might well induce an activity of public interest which had theretofore been lacking, we are still bound to scrutinize the law, and, at least if it be unambiguous and clearly applicable, to enforce it as written.

Section 10601.5, hereinabove quoted, is not on its face ambiguous. It says that "Every candidate for a judicial office . . , shall [within the time limited] file in the office in which

his nomination papers are required to be filed, a written and signed declaration of his intention [observe that this denotes an intention as to the *future*] to become a candidate for that office." The words "Every candidate for a judicial office" could not be made more certain. Surely the word "every" does not need definition. The word "candidate" is defined in 29 C.J.S. 19 as "one who seeks or aspires to some office or privilege, or who offers himself for the same; a person offering himself to the suffrage of the electors; one put forward for election, whether with or against his own will; *one put forward by others for an office; one who is selected by others for an office or place. . . .*" (Italics supplied.) The argument of petitioner that he was not a candidate at the time specified for filing the declaration of intention and that therefore the requirement of the law does not apply to him is almost too weak to merit comment. If that argument is sound as to petitioner then it is equally sound as to every other candidate for a judicial office who may elect to withhold a declaration of candidacy until it suits his convenience to finally make up his mind and declare it. By the simple expedient of withholding a declaration, he could avoid entirely the application of the law. Both section 10601 and section 10601.5 use the word "candidate" with context which clearly shows that the Legislature applied the word indiscriminately and equally to those whose candidacy is announced by sponsors and those who personally declare it. Section 10601 requires that "Each candidate for a numerically designated judicial office, not more than ten nor less than five days prior to the first day on which his nomination papers may be *circulated and signed,* or not more than ten nor less than five days prior to the first day on which his nomination papers may be *presented for filing,* shall file . . . a written and signed declaration of his intention to become a candidate for that office. . . ." (Italics supplied.) And section 10601.5 declares that "Every candidate for a judicial office, not more than 10 or less than five days prior to the first day on which his nomination papers may be *circulated and signed* or may be *presented for filing,* shall file . . . a written and signed declaration of his intention to become a candidate for that office." (Italics supplied.) The reference in each section to the day on which nomination papers may be *"circulated and signed"* is a reference to nomination papers circulated by the candidate on *his own declara-*

*tion* of candidacy and the reference in each section to the day "on which his nomination papers *may be presented* for filing" is a reference to the sponsor initiated declaration. *The day is the same in each instance;* the only reason which has been suggested for the Legislature's having been at pains to specifically enunciate both contingencies is a guarding against ambiguity which might defeat the law in one case or another—an ambiguity which petitioner's able counsel have diligently sought but not found. The meaning of the words "judicial office" as used in the questioned section (sec. 10601.5 of the Elections Code) is not disputed but is no more nor less clearly defined by sections 31 and 32 of the Elections Code. The word "shall," as used in the Elections Code, is defined as to its critical implication in section 15 thereof. The definition is: " 'Shall' is mandatory and 'may' is permissive."

Various provisions found in article IV of chapter 2 of division 5 (secs. 2599 et seq.) of the Elections Code, dealing with the direct primary law generally and not exclusively with judicial officers, further support the inevitable conclusion which I reach. Section 2600 provides that "No candidate's name shall be printed on the ballot to be used at the direct primary unless a declaration of his candidacy is filed not less than sixty and not more than ninety days prior thereto [the 60-day period is changed to 65 days for a limited period by section 2600.5, added at the special session of the Legislature in January, 1944]. The declaration may be made by the candidate, or, on his behalf by sponsors of the candidate. When the declaration is made by sponsors the candidate's affidavit of acceptance shall be filed with the declaration." Section 2603 provides that "A candidate who personally declares his candidacy shall cause sponsor certificates to be executed by his sponsors, pursuant to this article," and section 2612 delineates the alternative procedure, prescribing that "A declaration of candidacy may be made by sponsors, as follows: Any five voters of any county . . . may join in proposing a candidate for nomination, and in appointing verification deputies . . . to secure the signatures of sponsors to the declaration of candidacy of the proposed candidate. . . ." Section 2618 adds that "The number of signatures on declarations of candidacy by sponsors shall be the same, in the aggregate, as the number of sponsors re-

quired by this article of a candidate who personally declares his candidacy.''

That it is not contemplated by the general direct primary law (as distinguished from the special provisions as to judicial office candidates) that candidates may be proposed by the sponsor declaration method at any later date than candidates may file their own declarations, is established by section 2621, which enacts that ''The declaration of candidacy by the candidate personally and the declaration of acceptance of nomination shall be subscribed and sworn to . . . and at least sixty-five days before the August primary election shall be delivered to the county clerk [or registrar of voters] in the county in which the candidate resides.''

Section 2670 (in art. V, ch. 2, div. 5, Elec. Code), under the heading ''Nomination Papers,'' establishes that the ''declarations of candidacy and sponsor certificates'' constitute the ''nomination papers'' which are referred to in the controlling section with which we are dealing (sec. 10601.5).

Other provisions of the direct primary law might be mentioned as further supporting my view, but I am satisfied that enough have been set forth to irrefragably establish that section 10601.5 was intended to be and is applicable to and controlling of all judicial candidacies, whether initiated by sponsors' declarations or by those of the candidates personally. In conclusion on this phase of the matter it is pertinent to observe that sections 10600, 10601, and 10602 cover fully the cases of all candidates for ''numerically designated'' judicial offices and that section 10601.5, enacted subsequent to the other sections, can be only surplusage and utterly meaningless unless it is given application to non-numerically designated judicial offices.

On behalf of petitioner it is next contended that ''even if section 10601.5 does apply 'to declarations of candidacy by sponsors [secs. 2612 et seq.] it does not impose any penalties' for noncompliance, does not alter the duties of the respondent otherwise provided by law, and, in effect, is merely directory.'' This contention has already been substantially answered. The word ''shall,'' it has been shown, is expressly made mandatory by section 15 of the Elections Code. It has long been the established law of this state that failure of a candidate to comply with a mandatory provision of the election law creates a default from which the courts cannot relieve him. (*Sinclair* v. *Jordan* (1920), 183 Cal. 486, 487

[191 P. 910]; *Hartigan* v. *Jordan* (1920), 184 Cal. 72 [192 P. 1084]; *Griffin* v. *Dingley* (1896), 114 Cal. 481, 483 [46 P. 457]; see, also, *Steiger* v. *Collins* (1932), 215 Cal. 634, 638 [12 P.2d 426].) The provisions of section 10601.5 have special application to judicial offices, and must control over other provisions of law defining generally the duties of the respondent.

Lastly, it is urged that "Sections 10601 and 10601.5 of the Elections Code are special legislation and therefore unconstitutional." These sections are special legislation in relation to judicial offices but judicial offices constitute a well defined, natural and reasonable class and a proper field for special legislation which is applicable alike to all persons within the field. This legislation has a uniform operation within the class and does not offend the requirements of section 25 of article IV of the Constitution. (See *Roystone Co.* v. *Darling* (1915), 171 Cal. 526, 543 [154 P. 15]; *Steiger* v. *Collins* (1932), *supra*, 215 Cal. 634 [12 P.2d 426]; *Baertschiger* v. *Leffler* (1939), 36 Cal.App.2d 208, 213 [97 P.2d 501].)

From what has been said it follows that respondent was correctly advised as to the law governing the case and is correct in his announced intention not to include the name of petitioner in the list of qualified candidates for the office in question or on the ballots to be prepared for such office. While I deeply regret that upon my view of the law the name of Judge McKesson, whose personal qualifications are unquestioned, cannot properly be printed on the ballot at the ensuing primary election, I cannot join this court in striking down or failing to apply a valid law designed for the public benefit and salutary in its government of all candidates for judicial offices of the type involved, because in an isolated case it might seem to impose hardship upon one individual and possible loss to the state.

It seems apparent that the advancement of the primary election date from August to May due to the emergency of war, has furnished the basis for the unfortunate situation depicted in this case. Petitioner simply was appointed too late to enable him thereafter to qualify for printing of his name on the ballots to be used at the ensuing May election. If his appointment had been made after the time for filing sponsors' certificates had expired, or after the ballots had been printed and distributed, the legal situation would be no different

from what it is. It would only be more obvious. The statute in question makes no distinction between incumbents of an office and aspirants for it. They are all included in the words "Every candidate for a judicial office," and, if they are to have their names appear on the printed ballots, must comply with the conditions expressly made precedent and essential to that end. The fact that petitioner had not been appointed when the time for filing declarations of intention of candidacy expired is immaterial. As an individual citizen and member of The State Bar, he had a right, equal to that of every other qualified citizen, to file a declaration of intention within the prescribed period. Every qualified citizen had a right to file within that period; none is given a right to file at any other time.

The demurrer to the petition should be sustained without leave to amend and the application for the writ of mandate denied.

Traynor, J., concurred.